THE PEOPLE OF THE STATE OF ILLINOIS

*v.*

ESTATE OF ROBERT MOIR, deceased.

*Opinion filed February 17, 1904.*

1. DOMICILE—*"residence," as intended by Inheritance Tax act, means "domicile."* The "residence" in Illinois contemplated by the Inheritance Tax act is synonymous with "domicile" or "abode."

2. SAME—*residence presumed to continue until contrary is proven.* A residence once established is presumed to continue, and one alleging that a change has taken place has the burden of proof.

3. SAME—*inconsistent declarations as to change of residence have little weight.* Declarations, while admissible on the question of a change of residence, are entitled to but little weight where they are inconsistent with the acts of the party making the same.

4. SAME—*an intention to change residence is not sufficient.* · To bring about a change of residence there must not only be an intention to make the change, but the same must be actually effected by abandoning the old residence and permanently locating in new one.

5. INHERITANCE TAX—*when party is a resident of Illinois within the meaning of Inheritance act.* One who has decided to move from Illinois to the home of his daughter in another State as soon as his business is settled, but in the meantime is taken ill and is taken by his daughter to her home for medical treatment and care, where he dies within a short time, will be deemed a resident of Illinois at the time of his death, within the meaning of the Inheritance Tax act, where it appears such change was not expected to be permanent, everything being left undisturbed at the old home.

6. SAME—*intention to postpone enjoyment in lands conveyed need not be evidenced in writing.*   If the actual intention of the parties to a deed is that the possession and enjoyment of the lands are postponed until the grantor's death, the Inheritance Tax act is applicable, notwithstanding such intention is not evidenced in writing.

7. SAME—*when lands are subject to inheritance tax.*  Where deeds to lands are executed simultaneously with a partnership agreement between the grantor and the grantees, his sons, and the income from the land is thereafter carried into the partnership account, one-half going to the grantor and the remainder to the grantees, the one-half of the land as to which possession is thereby postponed is subject to the Inheritance Tax act.

APPEAL from the County Court of Henderson county; the Hon. W. T. CHURCH, Judge, presiding.

This is an appeal from a judgment of the county court of Henderson county adjudging that the estate of Robert Moir, deceased, was not subject to an inheritance tax.

The deceased had resided in Oquawka, in Henderson county, for many years, where he owned his residence and was engaged in the business of banking, merchandising, loaning money and farming, and where he had accumulated a large fortune.   His wife died in September, 1901.   For some time prior to her death he had contemplated leaving Oquawka.   He talked of going to California, and finally determined to go to Burlington, Iowa, where a married daughter, the wife of George Tracy, an attorney of that city, resided, and with whom he expected to make his home.   On Saturday, December 7, 1901, said daughter was at her father's home in Oquawka.   That afternoon Mr. Tracy came to Oquawka with the intention of remaining over Sunday.   In the afternoon of that day Dr. Fleming, of Burlington, was called by telephone to Oquawka to see Mr. Moir, who was somewhat indisposed.   On his arrival he held a consultation at the residence of Mr. Moir with Dr. Hanson, Mr. Moir's family physician, who resided at Oquawka. It was found that the deceased was suffering from an ulcerated tooth, and it was suggested that he go to Bur-

lington, where the same could be satisfactorily treated.
That evening Mr. and Mrs. Tracy and Dr. Fleming re-
turned to Burlington, accompanied by Mr. Moir. On
their arrival at the Tracy home a dentist, Dr. Cochran,
was called. Dr. Fleming, in company with Dr. J. W.
Holiday, treated Mr. Moir until December 19, 1901, when
he died at the home of Mr. Tracy. The remains were
taken to Oquawka for interment. The funeral was held
at and the burial took place from the Moir residence, in
which no change had been made during the twelve days
intervening between the time Mr. Moir went to Burling-
ton and his death

On June 1, 1898, Robert Moir executed a deed, for the
consideration of $100 and other good and valuable con-
siderations, to his three sons, Alexander, James and
Robert, purporting to convey to them all his real estate
situated in Warren and Henderson counties, Illinois,
except his homestead in Oquawka, which deed was ac-
knowledged February 26, 1899, and recorded in Hender-
son county March 25 and in Warren county March 27,
1902. On the same day that the deed bears date Mr.
Moir gave to each of his three sons $200,000 in personal
property, and articles of co-partnership were executed
between said Robert Moir and his said sons whereby the
members of the firm were each to put into the business
$200,000 and were to succeed to the banking business car-
ried on before that time by Robert Moir. Robert Moir
was to receive one-half of the profits of the business,
and the other half was to be divided equally among the
three sons. The farms owned in Warren and Henderson
counties, purporting to be conveyed by said deed, had
been rented by Robert Moir prior to the execution of said
deed and were occupied by tenants, a number of whom
testified they knew of no change in the ownership of the
farms occupied by them, respectively, prior to the date
of the death of Robert Moir, and that they transacted
the business connected with the renting of said farms

and in payment of rent with Robert Moir after the date of the deed the same as they had done before that date. The sons testified the land was not a partnership estate, but that the income thereof, as it accrued, was carried into the partnership account, and that Robert Moir received one-half thereof, as a member of said firm, up to the time of his death.

It was stipulated on the trial that Robert Moir died possessed of personal property of the value of $826,107.22, and that the real estate conveyed on June 1, 1898, to the three sons, was of the value of $105,200.

Propositions of law were submitted to the court wherein the court was asked to hold, as a matter of law, upon the facts disclosed by the evidence, that Robert Moir, at the time of his death, was a resident of Henderson county, and that the personal property of which he died possessed was subject to the payment of an inheritance tax; also, that said real estate was conveyed to said grantees with the intention that said conveyance should not take effect in possession or enjoyment until after the death of the grantor, and that said real estate was subject to the payment of an inheritance tax. The court refused to hold said propositions of law, and the action of the court in holding that the estate of Robert Moir, deceased, was not subject to an inheritance tax under the statute of this State is assigned as error in the manner following, that is to say:

*First*—The court erred in holding that Robert Moir was not a resident of Illinois at the time of his death and that his personal estate was not subject to an inheritance tax.

*Second*—That the court erred in holding that the real estate in Warren and Henderson counties conveyed by the deed of June 1, 1898, was not subject to an inheritance tax.

*Third*—The court erred in refusing to mark "held" and to hold as the law the seven propositions of law, and each of them, submitted for the People.

H. J. Hamlin, Attorney General, and J. W. Gordon, State's Attorney, for appellant:

A domicile or residence once established continues until abandoned and another of like character acquired in its stead. *Hayes* v. *Hayes*, 74 Ill. 314; *Glover* v. *Glover*, 13 Ala. 365.

The burden of proof lies on the party who asserts the change. 5 Am. & Eng. Ency. of Law, 865, note 2.

To effect a change of domicile there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence within another jurisdiction, coupled with the intention of making the last residence a permanent home. *Hayes* v. *Hayes*, 74 Ill. 312.

While conversations and declarations in regard to present or future domicile are admissible in evidence, they are the lowest species of evidence. *Kreitz* v. *Behrensmeyer*, 125 Ill. 197.

Declarations of a party may be disputed by his acts. *Kreitz* v. *Behrensmeyer*, 125 Ill. 197.

Under the Inheritance Tax act, where a deed in fee simple is executed and a bond taken for the payment to the grantor, during his lifetime, of one-half the net income, the deed is regarded as being intended to take effect in possession or enjoyment after the death of the grantor. *Reish* v. *Commonwealth*, 106 Pa. St. 521.

Where a will is made devising real estate, and the testator then makes a deed conveying his lands to persons named, to be disposed of as directed in his will, the land is subject to an inheritance tax. (*Appeal of Seibert*, 110 Pa. St. 329.) So, also, where the net income of the land is directed to be used for a certain purpose during life. *Crocker* v. *Shaw*, 54 N. E. Rep. 549.

H. B. Safford, and R. J. Grier, for appellee:

A citizen cannot be subjected to special burdens of taxation without a clear warrant of law. Either he or

his property must be brought clearly within the terms of the act. *People* v. *Sherwood*, 113 N. Y. 174.

Where a tax is special the tax-payer cannot be subjected to it without a clear warrant of law. *In re Enston's Will*, 113 N. Y. 174; *In re McPherson*, 104 id. 306.

The question of "domicile," in its legal signification, is immaterial in this case. The material thing is the question of "residence" at the time of the death of Robert Moir, as that is the term used in the Inheritance Tax act. *Supervisors* v. *Davenport*, 40 Ill. 197.

"Residence" and "domicile" are different things. They are not convertible terms or synonyms. 21 Am. & Eng. Ency. of Law, 124.

There is a broad distinction between a resident and a citizen. A man may be a resident of one State and a citizen of another State. *Darst* v. *Bates*, 51 Ill. 349.

A residence is a fixed and permanent abode or dwelling place for the time being, as contra-distinguished from the mere temporary locality of existence. Anderson's Law Dic.

To reside is to dwell permanently or for a length of time; to have one's home or settled abode; to abide continuously or for a lengthened period. Encyclopedic Dic.

A resident of a place is one whose place of abode is there and who has no present intention of removing therefrom. 21 Am. & Eng. Ency. of Law, 122.

Residence is a question of fact. *Witbeck* v. *Hardware Co.* 188 Ill. 154.

In order to acquire a residence there must be a settled fixed abode, and an intention to remain permanently, at least for a time, for business or other purposes. *Supervisors* v. *Davenport*, 40 Ill. 197.

Where a man acquires a permanent abode or dwelling place out of this State, at least for the time being, he becomes a non-resident. *Pells* v. *Snell*, 130 Ill. 379.

The place of one's legal residence is very largely a matter of intention. *Albee* v. *Albee*, 141 Ill. 550.

Intention enters into and forms a large element in fixing a person's residence. *Cobb* v. *Smith*, 88 Ill. 199.

Where there is a fixed determination to remain at a place for the time being, the party becomes a resident. *Way* v. *Way*, 64 Ill. 406.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

The controlling questions of law and fact arising on this record lie within a very narrow compass.

*First*—Was Robert Moir a resident of Henderson county at the time of his death? Mr. Moir had lived in that county for many years, and when a residence is once established the presumption is that it continues, and the burden of proof is upon the party to show a change who claims a residence once established has been changed. (10 Am. & Eng. Ency. of Law,—2d ed.—p. 6.) In this case the evidence relied upon to show a change of residence of Mr. Moir from Oquawka to Burlington consisted wholly of the proven declarations of the deceased. While such declarations are admissible in evidence they are not considered a high class of evidence, and when the acts of the party are inconsistent with his declarations the declarations are entitled to but little weight. (*Kreitz* v. *Behrensmeyer*, 125 Ill. 141.) The record is voluminous, and to set out in this opinion the declarations of Mr. Moir testified to by the numerous witnesses who testified upon that subject would serve no useful purpose. Suffice it to say, it is clear therefrom that the deceased had made up his mind to go to Burlington and make his home with his daughter at that place at some time in the future not far remote from the time when he actually went to Burlington. The evidence of all the witnesses on that point, with one or two exceptions, agrees, however, that at the several times upon which he spoke upon the subject he said he would go to Burlington when the business with which he was then connected was closed up. The busi-

ness of himself and sons at Oquawka, during the fall of 1901, was in process of settlement preparatory to the contemplated change. No new goods were being bought for the store which they were carrying on at that place, and the depositors in the bank were being paid off preparatory to transferring the assets of the bank to a national bank which was being organized at Oquawka to take on its business. The business was not, however, closed up at the time the deceased went to Burlington, and it is admitted that the various enterprises in which Mr. Moir was engaged continued to be carried on by his sons until some weeks after the death of Mr. Moir. The time, therefore, when the deceased had determined to change his residence had not arrived at the time he went to Burlington. To bring about a change of residence it is necessary that there be not only an intention to change the residence, but the change must actually be made, which can only be effected by abandoning the old and permanently locating in the new place of residence. We are strongly impressed that the deceased intended to make the change so soon as his business was closed up, but are equally clear that such intention was never executed by a permanent abandonment of the old and the selection of a new place of residence by Mr. Moir. It appears that he was at his home in Oquawka on the 7th of December, 1901; that he was indisposed; that his daughter was with him; that Mr. Tracy came from Burlington on the afternoon of that day to Oquawka, expecting to spend the following day, Sunday, at the home of the deceased; that during the afternoon Dr. Fleming was telephoned to come to Oquawka; that he did so and met Dr. Hanson at the residence of the deceased; that after consultation they determined that Mr. Moir was mainly suffering from an ulcerated tooth, and that it was desirable he should see his dentist at once, who resided in Burlington; that thereupon Mr. and Mrs. Tracy returned home, the deceased going with them; that the

dentist was sent for and met him at the house of his daughter, and that other complications arising and Mr. Moir growing worse, he remained at the Tracy home until his death, which occurred December 19, 1901. It is plain that Mr. Tracy and wife did not return to Burlington in company with Mr. Moir by reason of the fact that after Dr. Fleming and Dr. Hanson arrived at the home of the deceased it was then agreed the time had come when the contemplated change of residence should be made, but that they returned to their home and took the deceased with them in order that the deceased might readily receive the medical attention which it was thought he needed. To have effected a change of residence at that time it was necessary that Mr. Moir should have gone to Burlington with the fixed intention of changing his residence,—that is, with the intention of abandoning his old residence and taking up a new residence in Burlington. The clear inference to be drawn from the evidence is, that the deceased went to Burlington for the purpose of receiving medical treatment, and not with the intention of effecting a change of residence. His business not having been closed up, he left his home, and all that was in it, as it had existed for years, his unmarried daughter, who was his house-keeper, and his servants, remaining. After his death his remains were taken back to the old home and a funeral was there held. All the facts show that he went to Burlington for a temporary purpose, and not with the intention of making said city his permanent future residence.

The terms "residence," "abode," "domicile," and kindred terms, differ somewhat in meaning, but when used in statutes similar to the one in force in this State providing for an inheritance tax, have frequently been held to be synonymous. (10 Am. & Eng. Ency. of Law,—2d ed.—p. 9; Cooley on Taxation,—2d ed.—p. 369; *Thorndike* v. *City of Boston*, 1 Metc. 242.) In *Hayes* v. *Hayes*, 74 Ill. 312, on page 316 it is said: "To effect a change of

domicile there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence within another jurisdiction, coupled with the intention of making the last acquired residence a permanent home."

In *DuPuy* v. *Wurtz,* 53 N. Y. 556, on page 561 the court say: "To effect a change of domicile for the purpose of succession there must be not only a change of residence, but an intention to abandon the former domicile and acquire another as the sole domicile. There must be both residence in the alleged adopted domicile and intention to adopt such place of residence as the sole domicile. Residence alone has no effect *per se,* though it may be most important as a ground from which to infer intention. Length of residence will not alone effect the change; intention alone will not do it, but the two taken together do constitute a change of domicile."

In *Thorndike* v. *City of Boston, supra,* which was an action to try the question whether the plaintiff, who had left the country with his family, was liable afterwards to be taxed as an inhabitant of the place of his former residence, the court, speaking through Chief Justice Shaw, said (p. 245): "The questions of residence, inhabitancy or domicile,—for although not in all respects precisely the same they are nearly so and depend upon much the same evidence,—are attended with more difficulty than almost any other which are presented for adjudication. No exact definition can be given of domicile. It depends upon no one fact or combination of circumstances, but from the whole, taken together, it must be determined in each particular case. It is a maxim that every man must have a domicile somewhere, and also that he can have but one. Of course, it follows that his existing domicile continues until he acquires another; and *vice versa,* by acquiring a new domicile he relinquishes his former one. From this view it is manifest that very slight circum-

stances must often decide the question. It depends upon the preponderance of the evidence in favor of two or more places, and it may often occur that the evidence of facts tending to establish the domicile in one place would be entirely conclusive were it not for the existence of facts and circumstances of a still more conclusive and decisive character which fix it, beyond question, in another. So, on the contrary, very slight circumstances may fix one's domicile if not controlled by more conclusive facts fixing it in another place."

We are of the opinion the county court erred in holding that Robert Moir was a resident of the State of Iowa at the time of his death.

*Second*—Was the real estate conveyed by the deed on June 1, 1898, subject to an inheritance tax? The solution of that question depends upon whether said conveyance was intended to take effect in possession or enjoyment after the death of Robert Moir. If it was, the lands transferred by said deed are subject to an inheritance tax, otherwise not. The evidence shows that the deed and the co-partnership agreement were executed simultaneously; that the real estate was not a partnership asset, but that the profits from the real estate were carried into the co-partnership account, and that Robert Moir, as a member of said firm, received, from the time of the execution of the deed to the time of his death, one-half of the rents of said lands. If the rents from the lands had been reserved by Robert Moir, during his life, in the deed or by other writing, it would be plain that the deed was not intended to take effect in possession or enjoyment during the life of the grantor. If that was the intention of the parties to the deed, can an inheritance tax on said lands be defeated by reason of the fact that the intention to postpone the possession or enjoyment of the lands until after the death of the grantor is not evidenced in writing? We think not. If the failure to evidence such intention in writing would defeat the

inheritance tax, such tax could be defeated in every case by the parent executing a deed to his children and prospective heirs, relying upon their parol promises to account to him for the rents of the lands conveyed during the life of the grantor. In this case the grantor, by virtue of the partnership with his sons, who were the grantees in the deed, did not postpone the possession or enjoyment of all the lands until after the death of the grantor, but only the one-half part thereof. As to one-half of said lands the possession and enjoyment thereof were postponed during the life of Robert Moir, and we think, by reason of that fact, said one-half was subject to the payment of an inheritance tax. In *Reish* v. *Commonwealth*, 106 Pa. St. 521, a deed in fee simple was executed and a bond taken for the payment to the grantor, during his life, of one-half of the net income, and it was held the deed was intended to take effect in possession or enjoyment after the death of the grantor, and the estate was subject to an inheritance tax. In *Appeal of Seibert*, 110 Pa. St. 329, a will was made devising real estate, and the testator then made a deed conveying his lands to persons named, to be disposed of as directed in his will. The land was held subject to an inheritance tax. In volume 24 of the first edition of the American and English Encyclopædia of Law (page 464) it is announced that the policy of the law will not permit the owner of an estate to defeat the plain provisions of an inheritance law by any device which secures to him, for life, the income, profits and enjoyment of the estate. It must be by such a conveyance as parts with the possession, the title and the enjoyment in the grantor's lifetime.

The judgment of the county court is reversed and the cause remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*