In re Estate of Thomas Quinn, Deceased.
Josephine Quinn, Appellant, v. John F. Lukanitsch,
Administrator of the Estate of Thomas Quinn,
Deceased, Appellee.

Gen. No. 38,265.

Opinion filed February 11, 1936.

PATRICK J. CAHILL, of Chicago, for appellant.

Cummings & Wyman, of Chicago, for appellee; Austin L. Wyman and Daniel P. Nagle, of Chicago, of counsel.

Mr. Justice John J. Sullivan delivered the opinion of the court.

Josephine Quinn petitioned the probate court for the appointment of appraisers to set off to her a widow's award in the matter of the estate of her deceased husband, Thomas Quinn. The administrator objected that she was not entitled to an award and upon hearing her petition was denied by the probate court. On appeal to the circuit court her petition was again denied. This appeal followed.

The cause was heard upon the following stipulation of facts:

"(1) That this is a hearing *de novo* on a petition filed by Josephine Quinn, the widow of Thomas Quinn, decedent herein, in the Probate Court of Cook County, Illinois, praying for the appointment of appraisers to set off to her a widow's award under the statute of the State of Illinois, the prayer of which petition was denied by order of said Probate Court entered on or about November 12, 1934, in the matter of said estate, from the entry of which order an appeal was duly prayed, allowed and perfected to this Court.

"(2) That Thomas Quinn, the decedent, was born in Ireland, and as a young man emigrated to the United States, established his residence in Chicago, Illinois, where he lived with his first wife and reared five children by said wife.

"(3) That his first wife died and thereafter he returned to Ireland for a visit, and while there, at the age of seventy-six, married Josephine Quinn, the petitioner herein, her age being eighteen years, said parties being married on or about September 1, 1926. No children were born of this second marriage.

"(4) That Josephine Quinn and decedent lived to-. gether in Ireland as husband and wife from and after their said marriage until the death of Thomas Quinn, which occurred on January 23, 1934.

"(5) That said Thomas Quinn departed this life intestate on or about January 23, 1934, at Enniscorthy, (Wexford County, Ireland), leaving him surviving as his only heirs at law, and next of kin, his widow, Josephine, and five children by his first wife, all adults, and that the said Thomas Quinn was residing in Cook County, Illinois, at the time of his death.

"(6) That Thomas Quinn at the time of his death was a permanent resident of Cook County, Illinois, and his sojourn in Ireland was only temporary.

"(7) That Josephine Quinn, his widow and the petitioner herein, was never physically present in the State of Illinois or the United States of America.

"(8) That among the assets of the said estate is certain personal property, $26,000 in Illinois and $10,000 in Ireland, and that after the death of said decedent, John L. Lukanitsch of Chicago, Illinois, was appointed administrator in the Probate Court of Cook County, Illinois, and that said John L. Lukanitsch duly qualified as such administrator and has ever since and now is the duly qualified acting administrator of said estate, and said estate is still pending and undetermined in the Probate Court of Cook County, Illinois.

"(9) That all the children of Thomas Quinn are adults and that he never adopted any child or children, and no one is entitled to a child's award herein."

The only question involved in this controversy is the construction of the statute relating to a widow's award (Ill. State Bar Stats. 1935, ch. 3, ¶ 75, sec. 74), the pertinent portions of which are as follows:

"The widow, *residing in this State,* of a deceased husband whose estate is administered in this State . . . shall, in all cases . . . be allowed as her

sole and exclusive property forever . . . the following, to-wit:

. . . .

"First—The family pictures and the wearing apparel, jewels and ornaments of herself and her minor children.

"Second—Such sum of money as the appraisers may deem reasonable for the proper support of herself and his minor children for the period of one year after the death of the testator or intestate, in a manner suited to her condition in life, taking into account the condition of the estate of the testator or intestate." (Italics ours.)

Petitioner contends that Thomas Quinn was domiciled in Illinois at the time of his death, and that, therefore, she was domiciled in Illinois; that because of her domicile in Illinois she was *residing in this State* within the meaning of the statute; and that she is entitled to a widow's award.

The administrator's theory is that, inasmuch as Josephine Quinn was never physically present in the State of Illinois, she was not *residing in this State* within the meaning of the statute.

It will be noted that the parties stipulated that after his first wife died Thomas Quinn, the decedent, "returned to Ireland for a visit"; that petitioner and decedent lived together as husband and wife until the time of Thomas Quinn's death January 23, 1934; that "Thomas Quinn was residing in Cook County, Illinois, at the time of his death"; and that "Thomas Quinn at the time of his death was a permanent resident of Cook County, Illinois and his sojourn in Ireland was only temporary."

Under the stipulated facts the permanent residence or domicile of Thomas Quinn at the time of his death was in the State of Illinois, and the law is well settled that upon the marriage of petitioner and the decedent and so long as the relations between them were not ad-

verse, his domicile was her domicile and so continued throughout their married life. (*Cooper v. Beers,* 143 Ill. 25; *Evans v. Evans,* 164 Ill. App. 614; *Davis v. Davis,* 30 Ill. 180.) This rule was also recognized in *Ashbaugh v. Ashbaugh,* 17 Ill. 476, where it was said that the residence of the wife follows that of her husband, and in *Kennedy v. Kennedy,* 87 Ill. 250, the court said that it was not "aware that a different rule had been announced where the common law obtains."

But the administrator insists that the words "residing in this State" as used in the statute do not contemplate merely "legal residence" or mean "domiciled in this State," but require actual residence as a qualification for a widow's award; and that petitioner never having left Ireland and never having lived in this State cannot be held to come within the purview of the statute.

While no case has been cited where this statute has been construed as to a widow claiming an award who had never lived in the State of Illinois, the language "residing in this State," as used in the act has been held to mean "domiciled in this State," and, in the absence of adverse relations between the parties, the determining factor in arriving at this conclusion has been not the actual residence of the wife but whether or not the deceased husband had his permanent residence and domicile here. In *Hayes v. Hayes,* 74 Ill. 312, where a bill was filed which sought as part of the relief prayed to set aside the "widow's award" allowed in this State, the widow residing here, on the ground that the deceased husband was a resident of Iowa, the court in holding that the controlling element as to the propriety of the allowance of the widow's award, as well as the succession to the decedent's estate, was the domicile of the deceased husband, said at pp. 314 and 316:

"It is said by authoritative text-writers, that the term 'domicile' in its ordinary acceptation, means the place where a person lives or has his home. In a strict

legal sense, that is properly the domicile of a person, where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. Story's Confl. of Laws, 39, sec. 41. It is further said, actual residence is not indispensable to retain a domicile after it is once acquired; but it is retained, *animo solo,* by the mere intention not to change it and adopt another.

"  .  .  .

"To effect a change of domicile there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence within another jurisdiction, coupled with the intention of making the last acquired residence a permanent home. Nothing of this is discernible in the testimony in this record. The case of *Smith v. People,* 44 Ill. 16, may be referred to in support of this doctrine, and other cases cited. *Smith et al. v. Croom et al.,* 7 Fla. 200; *Shaw v. Shaw,* 98 Mass. 158. But the doctrine does not need the citation of authorities in its support."

In *Hutchings v. Hutchings,* 137 Ill. App. 495, where the Hutchings had at one time lived in this State as husband and wife but had moved therefrom sometime prior to the husband's death, she to establish a business in St. Louis, Missouri, and he to travel to St. Louis, Missouri, California and Australia, being lost at sea on his return from Australia, the court said at pp. 495, 496, 497:

"If at the time of the death of William H. Hutchings he had owned or controlled a permanent home in Illinois, in which he resided, or to which he intended to return to live, if away from the same temporarily, then his home would have been the home or domicile of appellant (the widow), in the sense in which that term is used in said section 74 (of the Administration act heretofore set forth).  .  .  .

"It is not claimed that deceased ever owned a home of any kind in Illinois, while upon the other hand the evidence shows him to have been a man who lived in many different cities, owning no home in any of them and who moved from place to place whenever his employment made a change desirable. . . .

"We are of the opinion, under all the evidence, that if Hutchings and his wife can be said to have had any home at the time of his death, it was in St. Louis, Missouri; and that neither one of them had any fixed or settled purpose to return to Illinois."

In *Kenton v. Hager,* 150 Ill. App. 347, where the widow lived in Illinois and her husband died in Kansas, whence he had been removed from his home in this State by his son during his last illness, the court in considering her application for a widow's award and allowing same determined that the decedent's domicile was the controlling factor rather than her actual residence, as will appear from the following language, at p. 353:

"We are of opinion that the domicile of Peter Hager remained in Illinois where his home had been all his active life and where all the property in fact was which the record shows that he possessed. The principal administration was therefore in Illinois, and his widow was entitled to an award in this state, regardless of the question whether she could have had an award here under our statute if the administration here were only ancillary."

In our opinion the last three cited cases, decided prior to 1909, construed the words "residing in this State" to mean domiciled within this State, and when the Widow's Award Act was amended in 1909, the phraseology "widow residing in this State" was retained as the residential requirement of the widow for the award. A construction of a statute by the courts, supported by long acquiescence on the part of the legis-

lature, or by continued use of the same language or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent. So the re-enactment of a statute, after it has been construed by the courts, amounts to a legislative adoption of such construction. (59 C. J. 1037; *Spiehs v. Insull,* 278 Ill. 184.) It necessarily follows that the legislature in retaining the phraseology "the widow residing in this State," when amending the Widow's Award Act in 1909, adopted the construction that had theretofore been placed on such language in the *Hayes, Kenton* and *Hutchings* cases, all of which held same to refer to the domicile of the decedent and his widow.

The words "residence," "residing," "domicile," and similar words, while having different shades of meaning, are often used synonymously and it is almost uniformly held that when such words are used in statutes they are used synonymously and signify "legal residence," or "domicile," unless their meaning is limited either by express definition in the statute or by the context of the act. In *Herron v. Passailaigue,* 92 Fla. 818, 110 So. 539, the Supreme Court of Florida stated the rule in the following language, at p. 543:

"The rule is well settled that the terms 'residence,' 'residing,' or equivalent terms, when used in statutes, or actions, or suits relating to taxation, right of suffrage, divorce, limitations of actions, and the like, are used in the sense of 'legal residence'; that is to say, the place of domicile or permanent abode, as distinguished from temporary residence."

In *People v. Moir,* 207 Ill. 180, in passing upon the word "resident" in our Revenue Act and construing it to mean "domiciled," the court said, at p. 188:

"The terms 'residence,' 'domicile,' and kindred terms, differ somewhat in meaning, but when used in statutes similar to the one in force in this State providing for an inheritance tax, have frequently been held

to be synonymous. (10 Am. & Eng. Ency. of Law,—2d ed.—p. 9; Cooley on Taxation,—2d ed. p. 369; *Thorndike v. City of Boston,* 1 Metc. 242.)"

Our Revenue Act renders subject to taxation "all moneys, credits, bonds or stocks and other investments . . . owned or controlled by persons residing in this state," (Ill. State Bar Stats. 1935, ch. 120, ¶ 1) and requires every person "being a resident of this state" to list his property for taxation. (Ill. State Bar Stats. 1935, ch. 120, ¶ 6, subpar. 1.) In *Holt v. Hendee,* 248 Ill. 288, the language of this act, "residing in this State" and "being a resident of this ·State," was construed to mean "person domiciled" in this State.

In *Thoms v. Thoms,* 222 Ill. App. 618, the words "resident" and "resided," as used in the Divorce Act were held to be synonymous with "domicile." In the case of *In re Petition of Mulford,* 217 Ill. 242, where the court was called upon to construe the phrase "no nonresident shall be appointed or act as executor," etc., it held the word "nonresident" to mean "one not domiciled."

The petitioner lived with deceased as his wife until his death and under the stipulated facts we think we may safely assume that she was willing and ready to come with him to his permanent residence in this State whenever he decided to cut short his visit to Ireland. That he failed to come home during his lifetime cannot fairly be charged to his wife to deprive her of the right to her award.

It is urged as a matter of public policy that the statute should be construed as applicable only to widows who are actual residents of this State. We can conceive of no sound reason for such a construction. After all, the award is paid from the estate of her deceased husband. Its purpose, in so far as it concerns the widow, is to afford her support during the year subsequent to her husband's death and before she could

otherwise realize anything from the administration of his estate. The relations of Josephine and Thomas Quinn were not adverse. Illinois was concededly his permanent residence. Under the law it was also hers, and, inasmuch as his estate is being administered here, we are of the opinion that she is entitled to receive the widow's award provided by statute.

For the reasons herein stated the order of the circuit court denying the petition of Josephine Quinn for the appointment of appraisers to set off a widow's award to her is reversed and the cause is remanded with directions that her petition for the appointment of such appraisers be allowed.

*Reversed and remanded with directions.*

SCANLAN, P. J., and FRIEND, J., concur.