**Cloann Garrison, Plaintiff, Counter-Defendant-Appellant, v. David Edward Garrison, Defendant, Counter-Plaintiff-Appellee.**

Gen. No. 68–72.

Second District.

March 20, 1969.

Vincent F. Lucchese, of Chicago, and John Knight, of Oak Park, for appellant.

Carbary, Carbary and Chapski, of Elgin, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The sole issue before the court on this appeal is whether the Circuit Court of Kane County had jurisdiction to enter the decree for divorce.

The plaintiff filed suit for separate maintenance from her husband. He answered and counterclaimed for di-

vorce on the grounds of adultery. After extended hearings, the trial court denied the plaintiff's claim for separate maintenance and granted the defendant a divorce on his counterclaim. The plaintiff then contended that the trial court did not have jurisdiction to enter a decree in that neither the plaintiff nor the defendant was a resident of Illinois. The trial court found that the defendant was and always had been a resident of Illinois. The plaintiff appealed.

In her suit for separate maintenance, the plaintiff alleged that both she and her husband were residents of Kane county. Her complaint further stated that because of her health, she had been spending portions of the winter months in Florida, for some years; that the parties maintained two homes—one in Florida and one in Kane County.

Regardless of the place of the plaintiff's residence, her separate maintenance action was properly filed in Kane County, if the defendant resided there. (Ill Rev Stats 1967, c 68, par 22.)

The defendant's answer and counterclaim for divorce admitted that both parties were residents of Kane County. Section 2 of the Divorce Act (Ill Rev Stats 1967, c 40, par 3) provides that to be entitled to a divorce the party obtaining it must have resided within the State one year prior to filing his or her complaint; or that either the plaintiff or the defendant must have resided within the State for six months if the offense complained of was committed within the State. Section 5 of the Act (Ill Rev Stats 1967, c 40, par 6) provides that the proceedings may be had in any county in which either the plaintiff or the defendant resides.

A substantial portion of the plaintiff's brief and argument is devoted to the contention that the plaintiff was not a resident of Kane County, and that, therefore, the court lacked jurisdiction to enter a decree for divorce.

However, the trial court found that she committed adultery in Kane County, and no appeal has been taken from this finding. Under the provisions of the above statutes, the plaintiff could properly invoke the jurisdiction of the court in her separate maintenance suit without being a resident of Kane County, if her husband resided there, and even if he had only resided there for the last six months. Under such circumstances, the court had jurisdiction to enter a decree for divorce.

By virtue of the jurisdiction issue which the plaintiff has raised, we will direct our attention only to the question of the place of the defendant's residence.

The parties hereto were married in 1953, at Elgin, Kane County, and lived in Illinois until 1957. In 1957, plaintiff became ill—her legs were swollen, her arms felt numb, and she ran a temperature. They had just moved into a new home which they had built in Kane County. The plaintiff's physician advised that she go to a warmer climate—either Arizona or Florida—to see if this would help her condition.

The plaintiff then went to Florida in December of 1957, and returned to Kane County in April of 1958, after the weather had improved locally. Thereafter, the plaintiff went to Florida every fall, stayed throughout the winter, and returned in the spring. The parties hereto built a home in Florida in 1961.

During all of this time, the defendant maintained a home in Kane County. After they sold the house which they had built in 1957, they lived with the defendant's mother; then rented an apartment; a house; and finally, the defendant built a new home in 1965. All of these places of residence were in Kane County: all were lived in and maintained by the defendant. He testified that he visited his wife about two or three times a month during her stays in Florida.

At the trial, the defendant testified that he had been employed by an Elgin plumbing and heating supply com-

pany for approximately 12 years; that there were 24 employees under his supervision, and that he had been president of the company since 1961.

In 1963 or 1964, there apparently had been some thought by the defendant of making Florida his residence. He testified that since that time, however, he had given up such plan; that his wife and children returned each summer to live with him; that the home which was built in 1965 was large enough for his entire family; and that he tried to get them to live permanently with him there.

■ The word "residence" may have a variety of meanings depending upon the context in which it is used. Stein v. County Board of School Trustees of Du Page County, 85 Ill App2d 251, 255, 229 NE2d 165 (1967), affd 40 Ill2d 477, 240 NE2d 668 (1968). As used in the Divorce Act, it does not mean the same as "domicile." Berlingieri v. Berlingieri, 372 Ill 60, 61, 62, 22 NE2d 675 (1939); Way v. Way, 64 Ill 406, 412 (1872).

As used in the Divorce Act, "residence" thus denotes "permanent abode." It is the place one considers as "home." Of paramount importance in determining whether a given place is or is not one's residence is the intent of that person to live there as his permanent home. Hughes v. Illinois Public Aid Commission, 2 Ill2d 374, 380, 118 NE2d 14 (1954); Stein v. County Board of School Trustees of Du Page County, supra, 256, 257; Blair v. Blair, 341 Ill App 93, 102, 93 NE2d 95 (1950).

The defendant—not only by his testimony as to his intent and what he considered his permanent home, but also by his acts and conduct throughout the years—evidenced an intent that Kane County was his residence. It was there that he filled the office of president of an apparently prosperous company; maintained a "home"; and in 1965 built a new home, which was ample for his entire family.

314

The fact that the parties also owned a house in Florida —a place where the plaintiff lived part of the year for health reasons—could not deprive the defendant of his residence in Illinois. The only time that the defendant ever considered living in Florida was either 1963 or 1964. The construction of the new home in Kane County in 1965, clearly indicated that the defendant then intended that Kane County would remain his place of residence. The length of time, as computed from that date, would be more than adequate to meet the residency requirements of the Divorce Act.

We appreciate that the children of the parties went to school in Florida, which seems only reasonable in that they were under the care of their mother, who was in Florida. The defendant, in the early '60's, also signed a Declaration of Domicile, indicating that Florida was his place of domicile. He stated that he did this to save taxes in the State of Florida. The parties also belonged to certain social organizations in Florida, and the defendant made numerous visits to his wife and family there. The trial court properly considered these facts, along with other facts relative to the location of the defendant's place of business, the nature of his business position, the length and continuity of his various places of residence within Kane County, as well as his construction of a new home there in 1965.

Under the record before us, we believe that the finding of the trial court relative to the defendant's residence was amply supported by the evidence. Therefore, the judgment of the trial court should be affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.