DAVID MILLER, Plaintiff-Appellee, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO *et al.,* Defendants-Appellants.

First District (1st Division)  No. 62213

Opinion filed May 10, 1976.—Supplemental opinion filed upon denial of rehearing June 21, 1976.

SIMON, J., dissenting.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellants.

Winkler & Fornelli, Ltd., of Chicago (Charles R. Winkler and Harry G. Fins, of counsel), for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

David Miller, a police Lieutenant, was charged with violating three rules of the Chicago Police Department. Rule 2 prohibits any conduct that

impedes the Department's goals or brings discredit upon the Department; rule 13 prohibits making false reports; and rule 24 requires all police officers to reside within the corporate boundaries of the City of Chicago. After a hearing, the Police Board of the City found that David Miller was guilty of violating these rules and ordered that he be discharged from the Police Department. Miller then filed an action for administrative review under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, pars. 264-279) in the circuit court of Cook County. The court reversed the findings and decision of Police Board. The Board and the other defendants appeal, contending that: (1) the residential requirement for Chicago police officers is binding on Lieutenant Miller; (2) a trial court may not substitute its judgment for that of an expert administrative body such as the Police Board; and (3) the court erred in reversing the Police Board's decision because the Board's findings were not against the manifest weight of the evidence.

At the hearing conducted by a hearing officer for the Police Board, five witnesses testified; namely, Lieutenant David Miller, Sergeant Paul Bendis, who investigated the charges for the Police Department, Sergeant Edward Miller, a Chicago Police officer who shared an apartment with Lieutenant David Miller, and two tenants of that apartment building. It was stipulated that the charges relating to the residential requirement for police officers would only deal with the question of whether Lieutenant Miller was residing in Chicago during October and November of 1973.

Sergeant Paul Bendis of the Chicago Police Department testified that he was assigned by his commanding officer to investigate a complaint that Lieutenant Miller was residing outside of Chicago. Bendis first obtained a copy of Miller's 1973 Residence-Auto Information Card filed with the Police Department which showed that David Miller owned a 1969 Chevrolet Camaro and lived at 2025 North Harlem in Chicago, Illinois, while his wife, Margaret Miller, owned a 1970 Oldsmobile convertible and lived at 311 West Washington in Villa Park, Illinois. Bendis then obtained a statement from the Northern Illinois Gas Company that a D. Miller was the subscriber for gas at his wife's Villa Park address during the months of October and November of 1973. The name of the subscriber was changed on or about December 1, 1973, to an M. Miller. David Miller's wife's first name is Margaret.

Bendis testified that he established surveillance of Lieutenant Miller's movements to and from the Chicago and Villa Park addresses. Bendis' testimony concerned surveillance on October 16, 17, 24 and November 20, 25, 26 and 27. On October 16, 17 and 24, he saw neither Lieutenant Miller nor his red Camaro parked at either the Chicago or Villa Park address. On November 20, 25 and 26, he observed Miller leaving the Villa Park address shortly after 11 p.m. and arriving at the 15th District police

station in Chicago a short time thereafter. On the morning of November 26 at 9:15 a.m. he observed Miller returning to the Villa Park address. He also observed Miller at the Chicago address on that morning. On November 27 he did not see Miller at either the Villa Park or Chicago address but did see his red Camaro parked at the Villa Park address.

Bendis testified that he visited the 2025 North Harlem address and discovered that Lieutenant Miller and a Sergeant Edward L. Miller, who is not a relative of Lieutenant Miller, shared an apartment there. The apartment contained uniforms, civilian clothes, family photographs and furniture belonging to Lieutenant Miller. The telephone there was registered in both David and Edward Millers' names. Sergeant Bendis interviewed a Robert Moore, a resident of the apartment building. Moore identified Lieutenant Miller's picture and stated that he lived at the address.

Sergeant Edward L. Miller testified that he and Lieutenant David Miller jointly rented the apartment at 2025 North Harlem in Chicago for three years, each paying one-half the rent. He is not related to Lieutenant Miller. The apartment, Sergeant Miller testified, has one bedroom, a living room and a small kitchenette. Sergeant Miller slept in the bedroom while Lieutenant Miller slept in the living room on a sofa bed. In October of 1973 Sergeant Miller saw Lieutenant Miller on four occasions at their Chicago apartment. Sergeant Miller was out of town 11 days in October. In November, when Sergeant Miller and Lieutenant Miller were both working the day shift, he saw the lieutenant about seven to ten times at the apartment.

Lieutenant David Miller testified that he had been a police officer for 20 years and a police lieutenant for 4½ years. He was married and had three daughters. Two of the daughters were in college and the third lived with her mother at 311 West Washington, Villa Park, Illinois. His wife and daughters lived at the Villa Park address for 16 or 17 years and were residing there in October and November of 1973. Lieutenant Miller testified that he is not divorced or separated from his wife.

Lieutenant Miller testified that during October and November of 1973, he lived at 2025 North Harlem Avenue, Chicago, Illinois, where for three years he shared the rent with Sergeant Edward L. Miller and that during the same period he spent an average of four or five nights a week at his Chicago address and two or three nights a week at his Villa Park address. He testified that he spent his days off at the Villa Park address working to keep the premises in good condition. The property in Villa Park, he testified, is owned by a trust and his wife is the beneficiary. He said he paid 90 percent of the bills on the Villa Park property and was also listed as the payer of the real estate tax on that property and as the subscriber for water bills during October and November of 1973. His wife, he

testified, was the "financier of the family." He would turn over his paychecks to her, and she would handle the finances which included giving him the money to pay his half of the rent for his Chicago apartment and the electric and phone bills there.

During October and November of 1973, Lieutenant Miller testified, he and his wife each owned a car which were both registered at his Chicago address. He had signed the Residence-Auto Information Card which listed one car at the Chicago address and one at the Villa Park address. He testified that the Oldsmobile, listed at the Villa Park address, was at the Villa Park address the vast majority of the time. He stated that he is a registered voter at his Chicago address and submitted his voter registration card, hunting license, driver's license, Federal income tax return for 1973, and various notices sent to him by the Police Department, listing his address as 2025 North Harlem, Chicago, Illinois.

Robert P. Moore, a tenant at 2025 North Harlem, testified that he had been a tenant in the building for 22 years and that he knew Lieutenant Miller as a resident of that building. He stated that he saw Lieutenant Miller twice a week at most and some times only two or three times a month. Josephine Esker, also a tenant of that building, testified that she lived in the building for 12 years and had never seen Lieutenant Miller. The only policeman in uniform she had seen there was Sergeant Edward Miller. She stated she knew about 10 of the 39 tenants in the building and worked from 11 a.m. to 9:30 p.m.

After reviewing the evidence the Police Board found Lieutenant Miller guilty of violating the three specified Police Department rules; rule 2 by conduct impeding the Department's goals and bringing discredit upon the Department; rule 13 by making a false report that he resided at 2025 North Harlem in Chicago when he in fact was residing in Villa Park, Illinois; and rule 24 by failing to reside within the corporate boundaries of the city of Chicago. The Board ordered him discharged.

The Police Board contends that its decision is not against the manifest weight of the evidence, and that the trial court erred in substituting its judgment for that of the Board. Lieutenant Miller responds that the Board's decision is against the manifest weight of the evidence.

We are of the opinion that the requirement of rule 24 that a police officer "reside" in Chicago is synonymous with a requirement that he have his "residence" in Chicago, as the terms "reside" and "residence" have generally been held to be synonymous. (See *Garrison v. Garrison*, 107 Ill. App. 2d 311, 246 N.E.2d 9; *In re Estate of Quinn*, 283 Ill. App. 597.) The terms "reside" and "residence" denote that a person has a permanent abode or home in a particular place *(Routt v. Barrett*, 396 Ill. 322, 71 N.E.2d 660; *Hughes v. Illinois Public Aid Com.*, 2 Ill. 2d 374, 118 N.E.2d 14; *Garrison v. Garrison*, 107 Ill. App. 2d 311, 246 N.E.2d 9), and a person

may not have a permanent residence in two places at the same time. (*Anderson v. Pifer,* 315 Ill. 164, 146 N.E. 171.) In order to have one's residence in a certain place one must both establish a physical presence there and have the intent to make that location his permanent residence. (*Routt v. Barrett,* 396 Ill. 322, 71 N.E.2d 660; *Hughes v. Illinois Public Aid Com.,* 2 Ill. 2d 374, 118 N.E.2d 14.) Intent is the most important element, and in determining intent a person's acts should be given more weight that his declarations. *Stein v. County Board of School Trustees,* 40 Ill. 2d 477, 240 N.E.2d 668; *People v. Estate of Moir,* 207 Ill. 180, 69 N.E. 905.

The evidence supports a finding that Lieutenant Miller resided outside the corporate limits of the city of Chicago during October and November of 1973. There was testimony that Lieutenant Miller had a physical presence at his Chicago address. There was substantial testimony that Lieutenant Miller resided at Villa Park and that he intended to retain the Villa Park residence as his permanent residence as manifested by his acts and the nature of his interests there. Lieutenant Miller said on the witness stand and on documents that he resided at 2025 North Harlem Avenue, Chicago, Illinois. Many of his acts point to the conclusion that he resides at 311 West Washington in Villa Park. Perhaps the strongest evidence that his permanent residence is in Villa Park is that his wife and daughter reside there. He testified that he is not separated or divorced from his wife. He turns over his paychecks to his wife and she manages the family finances. It would be unusual for a family man, not separated or divorced, to have a separate permanent residence from his family. Lieutenant Miller was also listed as the subscriber on gas bills and the payer of real estate taxes at the Villa Park address.

While Lieutenant Miller testified that he spent more nights at his Chicago address than at his Villa Park address and spent his days off at the Villa Park address, the testimony of the other witnesses place these statements in doubt. Sergeant Bendis who had put Miller under surveillance testified to observing Lieutenant Miller or his car at the Villa Park address four out of seven nights while observing him at his Chicago address on one of the seven occasions. On the occasions Sergeant Bendis observed Lieutenant Miller at the Villa Park address, he traveled to and from work. One tenant at Miller's Chicago address had never seen him there in the three years they both lived there, while another tenant saw Lieutenant Miller there twice a week or two or three times a month. Sergeant Edward Miller saw Lieutenant Miller there only seven to ten times during the month of November of 1973 when both had the day shift.

In *McCarthy v. Philadelphia Civil Service Com.* (1975), 19 Pa. Cmwlth 383, 339 A.2d 634, a recent case with similar facts to ours, the Commonwealth Court of Pennsylvania dealt with the question of

whether there was substantial evidence to support the Philadelphia Civil Service Commission's finding that a fire department officer violated a city ordinance requiring city employees to maintain a "bona fide residence" in the city of Philadelphia. The fire department officer sold his home in Philadelphia and moved his family, a wife and nine children, to a New Jersey suburb where the children attended school. The officer evenly split his time off between living at the New Jersey address and in Philadelphia at the fire station or at his mother's home where he allegedly stayed on duty days, received mail and was registered to vote. The marital relationship with his wife continued after the move to the New Jersey suburb and the officer was the sole support of his family. The court, placing special emphasis on the marital and family relationship, held that the evidence provided substantial support for the Civil Service Commission's finding that the officer's bona fide residence was in the New Jersey suburb and not in the city of Philadelphia.

■■ ■ Section 11 of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 274) states that the findings and conclusions of an administrative agency on questions of fact "shall be held to be prima facie true and correct." This statutory language has been construed to limit reviewing courts to determine whether the agency findings were against the manifest weight of the evidence. (*Davern v. Civil Service Com.*, 47 Ill. 2d 469, 269 N.E.2d 713; *Basketfield v. Police Board*, 56 Ill. 2d 351, 307 N.E.2d 371.) This court has held that reviewing courts should accord administrative agencies substantial discretion in construing and applying their rules. (*Scheffki v. Board of Fire & Police Commissioners*, 23 Ill. App. 3d 971, 320 N.E.2d 371.) We are of the opinion that the Police Board's finding that Lieutenant Miller violated rule 24 by residing outside the corporate limits of Chicago is not against the manifest weight of the evidence. This view also includes the findings and judgment as to rules 2 and 13.

Lieutenant Miller argues that the hearing was restricted by stipulation to consideration as to where he resided in October and November of 1973. He urges that the Board's decision handed down on January 13, 1975, that he violated rule 24 "in that he *is* residing at 311 W. Washington, Villa Park, Illinois," (emphasis added) is a nullity because the fact that he "is" residing in Villa Park at the time of the Board's decision does not establish that he "was" residing there in October and November of 1973. We are of the opinion that the use of the word "is" in the decision was merely an inadvertence. We note that the formal charges filed on July 25, 1974, also used the word "is" residing at 311 W. Washington, Villa Park. During the hearing before the Board's hearing officer, Lieutenant Miller's attorney pointed out the word "is" in the charge and stated that he understood that the charges only related to October and November of

1973. Both the Police Department's counsel and the hearing officer agreed that the charges only applied to October and November of 1973 and the hearing proceeded. There was also a stipulation that the only period to which the charges related was October and November of 1973. It was clear to the parties and the Police Board that they were only considering October and November of 1973. Furthermore, there was no evidence presented which would relate to any events after November of 1973. We are of the opinion, therefore, that the Board's finding and decision encompassed only October and November of 1973, and the use of the word "is" in the decision was inadvertent.

The judgment is reversed and the cause remanded to the circuit court with directions to enter a judgment restoring the findings and decision of the Police Board of the City of Chicago.

Judgment reversed and cause remanded with directions.

O'CONNOR, J., concurs.


Mr. JUSTICE SIMON, dissenting:

I respectfully dissent because I find the wording of the Police Department rule on which Lieutenant Miller's discharge was based too vague and indefinite to deal adequately with a police officer who maintains two homes, one of which is outside Chicago and within easy commuting distance. The rules of conduct of the Police Department at the time charges were preferred against Lieutenant Miller provided: "Prohibited acts include: Rule 24 Failure to reside within the corporate boundaries of the City of Chicago."

In view of shorter workweeks and better transportation, it is not uncommon for people, including police officers as well as other public employees, to have two homes within commuting distance of each other. The Supreme Court in *People v. Carman* (1943), 385 Ill. 23, 27, 52 N.E.2d 197, pointed out that the word "reside" is "defined as abiding in a place; one who resides" and that "It is a synonym of live, dwell, abide, sojurn, stay or lodge." I do not see how it can be seriously disputed that the respondent was dwelling, staying or lodging at his Harlem Avenue apartment in Chicago.

The Police Department requirement that an officer reside in Chicago was adopted for purposes entirely different than the residence determinations in the cases relied on by the majority. Those cases dealt with inheritance rights, registration for voting, right to receive public aid and the jurisdiction in which one may seek a divorce. None of those cases hold that a person may not regularly and frequently absent himself

from his domicile or residence in the State of Illinois or in any city in the State. For example, in *Garrison v. Garrison* (1969), 107 Ill. App. 2d 311, 246 N.E.2d 9, a woman who went to Florida every fall, stayed there throughout the winter in a home she and her husband owned and whose children went to school in Florida was regarded as a resident of Kane County, Illinois, for the purpose of seeking a divorce. The court pointed out that, "The word 'residence' may have a variety of meanings depending upon the context in which it is used." (107 Ill. App. 2d 311, 314.) In *In re Estate of Quinn* (1936), 283 Ill. App. 597, a widow was held to be "residing in this state" for the purpose of receiving a widow's award even though during her entire 8-year marriage to her deceased husband she had lived with him in Ireland and she had never at any time in her life been physically present in the United States. The facts of the cases the majority relies upon have no relevance to the reason the Police Department requires officers to reside in Chicago, and applying the language of those cases dealing with domicile and residence to the Police Department rule before us in this case does not supply guidelines for dealing with the reality that some police officers may maintain a dwelling or home in Chicago and a second dwelling or home within commuting distance of Chicago.

The rationale for the Police Department rule is threefold: It is to have police support the city by which they are employed with their presence, their money, their taxes, and their license fees as well as to vote in the city. It is also to have police officers available in Chicago in the event of an emergency. Finally, the knowledge a police officer acquires of his own neighborhood by living in it may prove useful in solving crimes. Notwithstanding its purpose, salutary as it may be, the rule as it read at the time Lieutenant Miller was charged with violating it, did not prevent a police officer from maintaining a second home outside the city and spending his offdays and several nights or weeks a month there.

Even the presence of a police officer's wife with him in Chicago during the days he is in the city does not guarantee that they well not spend much of their time in a second home outside the city. The difficulty with the rule is that it failed to recognize this pattern of living. A public employee is entitled to have the rules of conduct applicable to him defined so that they are clear on their face without the need to refer to case law. For that reason, I believe that unless redrafted to notify police officers in a precise manner which clearly explains what elements the Police Board will look to in determining where a police officer resides and under what circumstances an officer may use a second home outside the city, the rule is incapable of fair enforcement.

The fact the Lieutenant Miller spent much of his time in a home a short distance outside Chicago owned by a land trust of which his wife was

beneficiary and in which she resided during the 2-month period in question with one of his three daughters and that he paid the expenses of that home does not establish that Lieutenant Miller did not reside in Chicago within the requirements of the rule. In view of the absence of any explanation in the rule of the meaning of "reside," I do not believe the Police Board has demonstrated by the manifest weight of the evidence that Lieutenant Miller did not reside at his Harlem Avenue address even though he may have maintained that dwelling for the purpose of complying with the rule. If intention is controlling, it appears clear that Lieutenant Miller intended to reside in Chicago so that he would be in compliance with the rule.

The majority opinion by referring to the residence of his wife and daughter in Villa Park as the strongest evidence that Lieutenant Miller's permanent residence is there has the effect of requiring that not only must an officer reside in Chicago, but his wife and children must also live in the city. As I read the majority opinion, there is no way an officer could reside in Chicago within the meaning of the rule unless his wife and children also lived in Chicago, except if he was separated from his wife. If that is the intention of the rule, the Police Board rather than this court should be the authority to draft a rule clearly stating that. Apparently the Police Board itself regarded its rule as inadequate because after charges were preferred against the defendant the rule was amended by inserting the word "actually" before the word "reside." I would affirm the circuit court with the recommendation to the Police Board that it amend its rule to set forth in a clear and specific manner the circumstances, if any, under which a police officer may own and occupy a second home outside the city.

## SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

Mr. JUSTICE BURKE delivered the opinion of the court:

Appellee David Miller has raised three issues in his petititon for rehearing which were not raised in his original appeal to this court: (1) that the court applied the wrong police rule in finding that David Miller had violated the Police Department rules; (2) that the rule applied is unconstitutionally vague and therefore void; and (3) that the constitutional question regarding the rule's vagueness was raised for the first time in the appellate court, thereby entitling the petitioner the right to appeal to the Illinois Supreme Court on that issue.

Lieutenant Miller's first contention in his petition for rehearing is that this court erred in applying the police rule in effect when the offense took place rather than a subsequent rule which was in effect when the case was on appeal before this court. During the hearing before the Police Board, it was stipulated that the question whether Lieutenant Miller had violated

the Police Department rule requiring police officers to reside within the corporate boundaries of the city of Chicago was limited to the months of October and November of 1973. During October and November of 1973 police rule 24 was in effect which stated that all police officers must "reside within the corporate boundaries of the City of Chicago." According to the appellee rule 24 was revoked on December 13, 1973, when the Police Board published rule 25 requiring police officers to "actually reside within the corporate boundaries of the city of Chicago." In our opinion upholding the Police Board's termination of Lieutenant Miller's employment as a police officer, we held that the Board's finding that he had violated rule 24 was supported by the evidence. Lieutenant Miller now argues that we should have applied rule 25 which was in effect when the appeal was pending and not rule 24 which was in effect at the time of the violation.

■■ We first note that the first time the appellee raised the point that rule 25 and not rule 24 be applied was in his petition for rehearing. Rule 25 came into effect according to the appellee before the Police Board held its hearing. He argued before the Police Board that the evidence did not support a finding that he had violated rule 24. No contention was made by the petitioner that rule 25 should be applied. The Board found that Lieutenant Miller violated rule 24 and made no mention of rule 25. In appellee's action for administrative review in the circuit court, only references were made to rule 24 and there was no contention that rule 25 be applied. On appeal, he directed his arguments only to rule 24 and not to rule 25, citing the language of rule 24 and not that of rule 25. Where a party fails to raise an issue at the trial level (*City of Chicago v. Birnbaum*, 49 Ill. 2d 250, 274 N.E.2d 22; *People v. Amerman*, 50 Ill. 2d 196, 279 N.E.2d 353) or in his brief on appeal (Ill. Rev. Stat. 1973, ch. 110A, pars. 341(e)(7) and 341(f)), he waives any right to have a reviewing court consider the issue.

We also point out that the cases Lieutenant Miller cites in support of the proposition that a reviewing court must apply the law in effect during the appeal and not the law in effect during the trial are distinguishable. In *Thorpe v. Housing Authority*, 393 U.S. 268, 21 L. Ed. 2d 474, 89 S. Ct. 518, the question was whether a tenant should be evicted from federal housing that the tenant was occupying at the time the case was on appeal before the Supreme Court. In *Dolan v. Whitney*, 413 Ill. 274, 109 N.E.2d 198, and *Lincoln Community High School District No. 404 v. Elkhart Community High School District No. 406*, 414 Ill. 466, 111 N.E.2d 532, the question was whether to divide two school districts. Those cases all dealt with actions which had not yet taken place and the question was whether changes in the law should affect the final outcome of events which were to take place in the future. The instant case deals with violations of a

disciplinary rule which are alleged to have occurred before the new rule took effect. We are of the opinion that applying changes in the laws to actions which are to take place in the future is not analogous to applying changes in the laws to past offenses which took place before the law was changed. The appellee is asking us to apply a rule which did not exist at the time the violations occurred. This would be analogous to imposing an *ex post facto* rule upon him. (U.S. Const., art. I, §8.) We do not find it necessary to go into the merits of this contention.

Finally, we observe that even if appellee has a right to urge this issue and we agreed rule 25 applied, the outcome would be the same. The only difference between the rules is that rule 24 requires a police officer to "reside" within Chicago while rule 25 requires that he "actually reside" within Chicago. We find that the evidence supports a finding that Lieutenant Miller violated the Chicago Police Department rule requiring police officers to reside within the city limits whether rule 24 or rule 25 be applied.

Lieutenant Miller next contends in his petition for rehearing that the police residency rule is unconstitutionally vague. This issue was not raised before the Police Board, the circuit court or this court, and the lieutenant's attorney in his oral argument before this court stated that he was not raising the constitutionality of the Police Department's rule. He waived any right to urge the issue. (*City of Chicago v. Birnbaum*, 49 Ill. 2d 250, 274 N.E.2d 22; *People v. Amerman*, 50 Ill. 2d 196, 279 N.E.2d 353.) He asserts that the constitutional issue arose for the first time "when the appellate court decided against Lt. Miller, by applying a vague rule." If rule 24 was unconstitutionally vague when we applied it, then it was also unconstitutionally vague when the Police Board charged Lieutenant Miller with violating it and when it found him guilty of violating it. The appellee did not raise the issue at that time although he could have done so nor did he raise it before the circuit court or this court.

The petition for a rehearing is denied.

Petition denied.

O'CONNOR, J., concurs.

Mr. JUSTICE SIMON, dissenting:

I dissent. For the reasons set forth in the petition for rehearing and those stated in my dissenting opinion, I would allow a rehearing.