## In re Estate of Peter Hager, deceased.

### W. M. Kenton, Administrator, Appellant, v. Martha Hager, Appellee.

### Gen. No. 5,131.

1. ADMINISTRATION OF ESTATES—*when question as to widow's right to award not finally disposed of.* The whole matter of the widow's award remains within the jurisdiction of the Probate Court until it has made an order either denying any award or approving a particular award.

2. ADMINISTRATION OF ESTATES—*when widow entitled to award.* A widow whose husband died in another state is entitled to an award in this state if at the time of his death his legal domicile was in this state.

3. ADMINISTRATION OF ESTATES—*when principal administration in Illinois.* If a decedent at the time of his death was living in

another state, his legal domicile continued in Illinois if there was no intention when such decedent removed from Illinois to change such domicile or no capacity to make such a change, and the principal administration is to be regarded as in the state of the legal domicile.

Petition for widow's award. Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed October 19, 1909.

J. J. JOY and R. A. GREEN, for appellant.

J. T. & MAX MURDOCK, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On August 31, 1906, Martha Hager filed in the Probate Court of La Salle county, Illinois, a petition wherein she stated that her husband, Peter Hager, died intestate on March 4, 1906, in Kansas, while visiting there; that he left no real estate, but left notes and accounts and choses in action worth not to exceed $3,600; that the residence of petitioner for the last thirty years had been La Salle county, and that the home of the deceased was in La Salle county, for the last thirty years before his death, but that at the time of his death he was visiting a son in Kansas; and the petitioner asked that letters of administration be issued to Harry G. Cook, public administrator of La Salle county. The prayer of the petition was granted and Cook became administrator. Among the assets of deceased was a claim theretofore allowed in favor of Peter Hager against the estate of his deceased son, Stephen J. Hager, by the Probate Court of La Salle county, on December 5, 1905, in the sum of $2,223.22, after deducting certain credits in favor of Stephen J. Hager. The La Salle county administrator collected this claim from the estate of Stephen J. Hager, deceased, in the sum of $2,353.22, and paid taxes upon the personal estate and some other expenses. Appraisers were appointed, who allowed the widow an award of $1,815. Prior to this administration in La

Salle county, Illinois, the Probate Court of Rice county, Kansas, where Peter Hager died, appointed W. M. Kenton administrator of his estate on April 11, 1906. What estate there was for him to administer, other than this claim against the estate of Stephen J. Hager, deceased, does not appear. After the above widow's award had been allowed by the appraisers appointed by the Probate Court of La Salle county, Kenton, as the Kansas administrator, appeared in the Probate Court of La Salle county, and filed objections to said widow's award, both on the ground of lack of authority to make such an award and also that the award was excessive. On November 16, 1907, these objections were heard and the court held the award excessive and set it aside, and appointed three other appraisers. The latter made an award of $1,250 to the widow. Kenton filed like objections to this award which were heard and overruled and the award was approved. Kenton appealed from that order to the Circuit Court of La Salle county, where there was a hearing, and the second award was again approved. Kenton has appealed from that order to this court.

Section 74 of the Administration Act (chapter 3 of the Revised Statutes) as it read prior to July 1, 1909, was in part as follows: "The widow, residing in this state, of a deceased husband whose estate is administered in this state, whether her husband died testate or intestate, shall, in all cases, in exclusion of debts, claims, charges, legacies and bequests, except funeral expenses, be allowed, as her sole and exclusive property, forever, the following, to-wit:  *  *  *  which shall be known as the widow's award." Appellee contends that as the widow resides in this state, and as her deceased husband's estate is being administered in this state, the proof brings this case exactly within the statute and the widow is entitled to an award here, regardless of all other questions. Appellant contends that Peter Hager was domiciled in Kansas at the time of his death; that Kansas was the situs of all his personal estate, including this judgment

against the estate of his son Stephen in Illinois; that the principal administration is in Kansas, and that the administration in Illinois is ancillary only; and that the statute above quoted only applies where the principal administration is in this state, and therefore does not apply to this case.

Each party relies upon the order entered by the probate court on November 16, 1907, as a bar to the other party. That order found that the domicile of Peter Hager at the time of his death was Rice county, Kansas; that the widow resided in this state at the time of her husband's death, and was entitled to an award as such widow under the statute; but that the award theretofore returned by the appraisers was excessive; and it appointed new appraisers. That order was entered at the November term, 1907, and no one appealed from it. The order approving the second award to the widow was made at the January term, 1908, and found nothing concerning the domicile of deceased or the right of the widow to an award, except what was implied in overruling the objections thereto. The appeal by the Kansas administrator was from the order at that January term. Appellant argues that as neither the widow nor the La Salle county administrator appealed from the order at the November term, it was a finality and conclusively established that Rice county, Kansas, was the domicile of Peter Hager at the time of his death and was the place of principal administration, and therefore no award can be made to the widow here. Appellee argues that as the Kansas administrator did not appeal from the order at the November term, it is thereby conclusively adjudged that the widow is entitled to an award here under the laws of this state. We are of opinion that if the order of the November term is binding as a final judgment, then it is settled that the principal administration is in Kansas, and it is also settled that the widow is entitled to an award in this state. This would dispose of the main questions in the case in favor of the widow. But we are of opinion that there was no final

order in the Probate Court on this subject till an award was allowed to the widow. Under the view asserted by the parties the widow should have appealed from so much of the order of the November term, as held that Peter Hager was domiciled in Kansas at the time of his death, and the Kansas administrator should have appealed from so much of that order as held that the widow was entitled to some award, and thus there would have been two appeals on the subject pending in the upper courts, when no widow's award had yet been made or refused in the Probate Court. We are of opinion that the whole matter of the widow's award remained within the jurisdiction of the Probate Court till it made an order either denying any award or approving a particular award, and that the appeal from the only final order of the Probate Court opened all questions.

It seems to be contended by appellant that the Circuit Court held that the question of the domicile of Peter Hager at the time of his death was conclusively settled by the November term order of the Probate Court, and that the Circuit Court rejected or refused to hear evidence upon the subject of domicile. A reading of the entire colloquy on that subject between the court and counsel, as set out in the record more fully than in the abstract convinces us that the court made no such ruling. The evidence on the subject of the domicile was full and was mostly introduced by appellant.

Peter Hager lived and had his home in La Salle county nearly all his life. He there buried his first wife, the mother of his children, and afterwards married his present widow there, and there had a home with her. How long he and his second wife lived together does not appear, but it was long enough so that one of his children testifying by deposition in Kansas, spoke of her as "Mother." Peter and his wife both became old and feeble. There is a difference among the witnesses as to his age, but the family considered that he was eighty-eight years old when he

died, which was some ten months after his son Zachariah took him to Kansas. The widow was about seventy-one years old when her husband died. They had lived together in their own home in La Salle county till Peter had a stroke of paralysis. They seem to have then removed to the home of his son Stephen in La Salle county. As soon as Peter got better, Stephen, who was himself ill and who was heavily indebted to his father, declared that while he woulld take care of his father he would not take care of his step-mother, and she was compelled to go to the home of one of her children by a former marriage. Peter's son Zachariah soon came from Kansas on a visit and finding Stephen ill and unable to care for their father, proposed to take Peter back to his home in Kansas. When the proposition was made to Peter he cried and said he could not stand the trip, but he afterwards consented to go. When the evidence is read in full in the record, and especially that of Zachariah and his wife, we think it clear that Peter was feeble, very childish, that he could not be trusted to go about alone and take care of himself, that he was not competent to transact business, that he had not sufficient memory to have been able to travel alone from Illinois to Kansas, that his children could not say that he knew the difference between Kansas and Illinois; that his memory was very poor, especially as to all recent events; that his speech was much impaired by his paralysis; and that he often could not find words or utterance for what he apparently wished to say. He was in fact a child in mind and body. He could not support himself. He could not be trusted to attend to his own personal wants. He needed constant care and personal attention. Stephen could not give it because he was ill, and he died soon thereafter. All the rest of Peter's children were in Kansas. Zachariah came on, and found it was necessary for some child to take charge of his father, and very properly and very kindly offered to take that duty upon himself. Stephen consented and so did Peter's wife, who in her aged and feeble condition

could not do otherwise, and Zachariah took his father to his own home in Kansas and kept him there, except when Peter was visiting another son in another county. Peter wanted to come back to Illinois to see about some notes which he thought needed attention, but the family considered him too feeble to make the journey. Proof was made that he consented to go to Kansas to live with Zachariah, and that when there he said he preferred Kansas to Illinois.

We are of opinion that this feeble old man, unable to care for himself, with mind and memory greatly impaired, often unable to talk or to find the right word to express what he wished to say, partially paralyzed and in his dotage, was unable to form an intention to change his domicile from Illinois to Kansas, and that he did not in fact form any such intention, but that this was an arrangement made and perfected among his children, who were very kindly performing the duty of taking care of their father at such places as best suited their conditions in life. We are of opinion that the domicile of Peter Hager remained in Illinois where his home had been all his active life and where all the property in fact was which the record shows that he possessed. The principal administration was therefore in Illinois, and his widow was entitled to an award in this state, regardless of the question whether she could have had an award here under our statute if the administration here were only ancillary.

We would have been better satisfied if the estimate by the appraisers had been somewhat lower. But it must be presumed that the appraisers took into consideration all matters bearing upon the amount to be allowed for each of the several items which the statute awards to the widow, till the contrary appears. The application to the Probate Court of La Salle county for letters of administration put the value of the estate to be administered in Illinois at not exceeding $3,600. There was nothing to show the value of the estate administered in Kansas. We therefore cannot,

say that the award is excessive, in view of the entire estate. The widow is aged, infirm, and living with a married daughter who is very poor. We do not feel called upon to reduce the amount awarded by the second appraisers and approved by the Probate and Circuit Courts.

The order is therefore affirmed.

*Affirmed.*