In re Estate of Hiram T. Gilbert, Deceased. Georgiana G. Hess, Appellant, v. Helen S. Gilbert and John J. Sonsteby, Executor of Last Will and Testament of Hiram T. Gilbert, Deceased, Appellees.

**Gen. No. 41,661.**

Heard in the third division of this court for the first district at the April term, 1941. Opinion filed June 25, 1941.

HENRY L. BLIM, of Chicago, for appellant.

HARRIS F. WILLIAMS and ROBERT C. BAUMGARTNER, both of Chicago, for appellee Helen S. Gilbert.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Hiram T. Gilbert, a lawyer, died in Chicago, Illinois on November 29, 1939, at the age of 89 years, leaving surviving as his only heirs and next of kin, two daughters, Helen S. Gilbert and Georgiana G. Hess. On October 17, 1939, he made a will, which bequeathed $500 to each daughter and the remainder of his estate to the Chicago Title & Trust Company, as trustee, to be disposed of as part of the trust estate theretofore established by him. The will was admitted to probate on December 8, 1939, and John J. Sonsteby, designated therein as executor, duly qualified as such. The value of the corpus of the trust estate, excluding any accretions by virtue of the will, is approximately $25,000. The daughters are equal beneficiaries in the trust. On December 26, 1939, the probate court approved an inventory showing assets of $3,474.03 in the possession of the executor, and also approved the recommendation of three appraisers that Helen S. Gilbert be allowed a child's award of $800 and entered an order allowing such award. On March 5, 1940, Georgiana G. Hess filed a petition in the probate court of Cook county alleging that at the time of his death, Hiram T. Gilbert "was not a housekeeper, the head of a family," and that Helen S. Gilbert did not reside with her father at the time of his death. Petitioner prayed that upon a hearing the court vacate the order allowing a child's award. The executor answered, asserting that at the time of his death Hiram T. Gilbert lived at the Del Prado Hotel, 5307 Hyde Park boulevard, Chicago, with his daughter, Helen S. Gilbert, and that both resided there since June 1936. Following a hearing, the probate court denied the prayer of the petition of Georgiana G. Hess to vacate the child's award and dismissed her petition. Georgiana perfected an appeal to the circuit court of Cook county. In the latter court Georgiana moved to strike the answer of the executor and

to enter an order of default against Helen. The court declined to strike the answer and permitted Helen to file an answer. This answer is similar to the one previously filed in the probate court by the executor. A replication to the answers was filed by Georgiana. The cause was tried by the court without a jury and resulted in a judgment order that the petition of Georgiana to vacate the child's award, be denied, and that such petition be dismissed with costs taxed against her. She prosecutes this appeal to review the judgment order. John J. Sonsteby died on April 15, 1941. On May 23, 1941 we allowed a motion substituting Norman Crawford, Administrator *de bonis non* with the will annexed of the estate of Hiram T. Gilbert, deceased, in lieu of John J. Sonsteby as executor.

There is substantially no dispute as to the facts. At the time of her father's death, Helen was about 58 years of age. At that time, and for many years prior thereto, she had been a high school teacher in the public schools of Chicago. Hiram T. Gilbert purchased a 14 room wooden house at 5234 South Woodlawn avenue, Chicago, in 1886. He and his family moved into the premises in 1899. His wife, the mother of Helen and Georgiana, died in January 1935. Hiram T. Gilbert remarried on June 1, 1935. He then moved away from the premises and lived with his second wife at a location not disclosed by the record until September 23, 1935, when he and his wife moved into a three room apartment at the Del Prado Hotel, 5307 Hyde Park boulevard, Chicago. His second wife died in May 1936. On July 4, 1936, following the death of her stepmother and at the request of her father, Helen, who was then stopping at the Sherman Hotel, Chicago, began to live with him in his suite at the Del Prado Hotel, and continued to live with him until his death on November 29, 1939. At the time of the trial she continued to occupy that apartment. Helen moved

into the 14 room house at 5234 South Woodlawn avenue in 1899. She resided there at the time of the death of her mother in January 1935, and was residing there at the time of her father's remarriage on June 1, 1935. Helen testified that she "stayed" at the Sherman Hotel from the middle of January 1934 until July 4, 1936, when, at her father's request, she moved into his apartment at the Del Prado Hotel. She also testified that while she was staying at the Sherman Hotel, the residence at 5234 South Woodlawn avenue continued to be her "home"; that her intention was to return to the Woodlawn avenue house; that if her stepmother had not died in 1936 she would have moved back to the Woodlawn avenue house; that because of the death of her stepmother she stayed with her father; that she intended at all times to retain the Woodlawn avenue house as her permanent "home." To the question, "From that time up to the present that was to be your permanent home and you will go back there when you get through living temporarily at the other places?" she answered, "So far as I know now. Of course, I am waiting to see what happens now." In answering the question, "And that has been your intention all the time from 1935 up to the present, has it not?" she answered, "Yes, I think so. Of course my plans now are uncertain. I really don't know what I am going to do, but I have not decided anything until this litigation is over. I don't care to move half a dozen times." She further testified that while she was living at the Sherman Hotel she spent a great deal of time at the Woodlawn avenue house "especially in the summer"; that she had a front door key to the house; that she had two rooms reserved in the house for herself; that one room is completely furnished; that she did not have time to fix the other room the way she wanted it to be; that she also had a piano in the Woodlawn avenue premises, a large rug, a number of chairs, a

library table, a phonograph, a number of oriental rugs and quite a few books and dishes, and that all of these were her property and that they have not been moved.

The house at 5234 South Woodlawn avenue is in the 38th precinct of the 4th ward, while the Del Prado Hotel at 5307 Hyde Park Boulevard is in the 11th precinct of the 5th ward. These places are about 10 blocks apart. Helen registered as a voter from 5234 South Woodlawn avenue and did not register from 5307 Hyde Park Boulevard. Her registration as an elector at 5234 South Woodlawn avenue continued to, and including, the election in November 1940. She voted from that address every year when there was an election, except that she may have missed one primary election. Helen testified that at the time she made application for permanent registration her father advised her that the Sherman Hotel was "only a temporary residence and to keep on voting from 5234 South Woodlawn avenue, so I did so." She owned an interest in the Woodlawn avenue property. On November 26, 1935, she applied for a telephone at the Woodlawn avenue address. This application was in her own name and the telephone is listed as Helen S. Gilbert, 5234 South Woodlawn avenue, Hyde Park 0820. She has at all times retained the Woodlawn avenue home as her mailing address. During 1938 and 1939 she made several sabbatical leave reports to the Board of Education of the city of Chicago. In these reports she designated 5234 South Woodlawn avenue as her permanent address and also as her "present" address. During the same time she mailed to the Board of Education eight other communications in which she designated 5234 South Woodlawn avenue as her address. Upon her father's death she signed a death certificate form wherein she gave the Board of Health certain pertinent data, and also gave her postoffice address as 5234 South Woodlawn avenue. Hiram T. Gilbert moved into the Del Prado Hotel on September 23,

1935, and lived there until his death. His suite contained three rooms and several closets, one of which was transformed into a kitchenette containing a refrigerator, a cupboard, an electric plate type stove and a number of shelves. Most of the furniture in the apartment belonged to Helen's stepmother. Gilbert used one room as a study and bedroom and gave the bedroom containing two beds to his daughter Helen. He paid the rent for the apartment. As stated, Helen moved into the hotel apartment in July 1936. She lived in the apartment with her father until his death in 1939 and was residing there at the time the case was tried. Her father was an early riser. She would then prepare a grapefruit for him. She would eat breakfast in the apartment but her father would eat his breakfast in the hotel dining room. In the evening Helen and her father generally went out to dinner, for which he paid as a general rule. Occasionally she prepared meals in the kitchenette. She also remained in the apartment when her father was ill, ministering to his wants. He instructed the hotel management to charge anything that came in for his daughter or for himself to his account and to give her a key to the apartment.

In support of their respective positions the parties cite sections 74 and 77 of the Administration Act (Pars. 75 and 78, ch. 3, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 110.075, 110.078]) reading:

"74. Widow's award. The widow, residing in this State, of a deceased husband whose estate is administered in this State, whether her husband died testate or intestate, shall, in all cases, in exclusion of all debts, claims, charges, legacies and bequests, except funeral expenses, be allowed as her. sole and exclusive property forever, except as herein otherwise provided, the following, to-wit: . . . Second—Such sum of money as the appraisers may deem reasonable for the proper support of herself and his minor children for the

period of one year after the death of the testator or intestate, in a manner suited to her condition in life, taking into account the condition of the estate of the testator or intestate. . . .

"77. Allowance to children. When the person dying is, at the time of his or her death, a housekeeper, the head of a family, and leaves no widow or surviving husband, there shall be allowed to the children of the deceased, residing with him or her at the time of his or her death (including all males under eighteen years of age, and all females), the same amount of property and money, subject to the review of the court as provided in section 75, is allowed to the widow for herself and children by this Act. . . ." Georgiana contends that the words of section 77, "residing with him or her" at the time of his or her death mean "having a legal residence or domicile with the parent" and being a member of his or her family. Helen meets this contention by arguing that the word "residing" used in section 77 (par. 78) means "living" in its usual ordinary sense and does not mean "domiciled." We find that Helen at all times considered the house at 5234 South Woodlawn avenue to be her permanent abode, and that she intends to return to it when this litigation is concluded. She so testified. She registered and voted from the Woodlawn avenue address. She applied for a telephone at that address, which is listed under her name. She has a key to the front door and reserves two rooms furnished for herself and also owns other furniture therein. That is her mailing address. In her reports to the Board of Education she shows that as her address. In acting as informant as to data requested by the Health Department, following her father's death, she gave the Woodlawn avenue house as her address. The record also shows that her father advised her to retain that location as the place from which to vote. Her father, being a lawyer, knew the provisions of section 77

(par. 78) relative to an allowance "to the children of the deceased residing with him" at the time of his death. He made his will on October 17, 1939, and at that time he knew that Helen had been living with him for approximately three and one-half years, yet, in the will he gave $500 to each of his daughters, and the remainder to the trustee of a trust previously established, in which trust the daughters share equally. We are of the opinion that during the time that Helen lived with her father at the Del Prado Hotel, both Helen and her father recognized that her residence and domicile was at the old family home on Woodlawn avenue. Section 74 (par. 75) gives the award to the widow "residing in this state" while section 77 (par. 78) gives the award under certain circumstances to the children of the deceased "residing with him at the time of his death." Both of these sections were enacted in 1845. They have been amended, but the word "residing" has been retained. The case of *In re Estate of Thomas Quinn*, 283 Ill. App. 597, involved a dispute as to a widow's award under section 74 (par. 75). Thomas Quinn, a widower and a resident of Cook county, went to Ireland on a visit, where he married Josephine. While in Ireland he died. The parties stipulated that he was at all times a resident of Illinois. Josephine was never physically present in the State of Illinois. The Appellate Court found that his domicile was her domicile and so continued throughout their married life and that she was entitled to an award. The court, speaking through Mr. Justice JOHN J. SULLIVAN, said (604):

"The words 'residence', 'residing', 'domicile' and similar words, while having different shades of meaning, are often used synonymously and it is almost uniformly held that when such words are used in statutes they are used synonymously and signify 'legal residence', or 'domicile', unless their meaning is limited either by express definition in the statute or by the

context of the act." Georgiana urges the *Quinn* case as support for her contention that the word "residing" used in section 77 means "domicile" or legal residence. She maintains that it is a rule of construction that when words appear more than once in a statute, it will be presumed that the General Assembly intended to attribute to them the same meaning throughout, unless there is something to show that a different meaning was intended. This is a correct statement of the law. *(Moweaqua Coal Corp. v. Industrial Commission,* 360 Ill. 194, 200; *Lawton v. Sweitzer,* 354 Ill. 620, 625.) We are of the opinion that the same meaning should be given to the word "residing" as used in both sections of the act. In *Kenton v. Hager,* 150 Ill. App. 347, in considering an application for a widow's award, the court held that the decedent's domicile was the controlling factor rather than her actual residence. We cannot agree with the position of Helen that the word "residing" is to be interpreted as "living" rather than in the strict legal concept of the word "domicile." She points out that dependence upon a parent is not a requirement of the section providing a child's award. This statement is not challenged. The evidence shows clearly that Helen never abandoned or had any intention of abandoning her residence and permanent abode at 5234 South Woodlawn avenue. She could have but one residence or domicile and her residence, domicile and permanent abode continued where once established until she acquired a new domicile by actual residence, coupled with the intention to make it a permanent home. In the case of *Anderson v. Pifer,* 315 Ill. 164, an election contest, the court said (167):

"A permanent abode is necessary to constitute a residence. . . . 'Residence' and 'permanent abode' are synonymous terms. . . . One cannot have a residence in two places at the same time." In *People v.*

*Estate of Moir,* 207 Ill. 180, an inheritance tax case, the court said (189) :

"It is a maxim that every man must have a domicile somewhere, and also that he can have but one." From a thorough consideration of the facts, the two sections of the statute and the cases cited, we are of the opinion that Helen was not "residing" with her father at the time of his death within the meaning of section 77.

Georgiana also insists that the court erred in admitting an assignment executed by her and in refusing to admit her testimony in explanation thereof. The assignment received in evidence is dated July 30, 1940, and assigns her legacy of $500 to Louis Berman. The fact that she assigned the legacy of $500 would not affect her right to contend that her sister Helen should not have a child's award. Although the trial judge admitted the assignment, he did not give any weight to it in deciding the case. Hence, it is unnecessary for us to consider it further. Other points have been urged, but because of the views expressed it is unnecessary to extend the opinion by discussing such points.

For the reasons stated, the judgment order of the circuit court of Cook county is reversed and the cause remanded with directions to enter an order vacating the allowance of a child's award.

*Reversed and remanded with directions.*

HEBEL and DENIS E. SULLIVAN, JJ., concur.