HERBERT ASHLEY *et al.* Appellants, *vs.* THE BOARD OF EDUCATION *et al.* Appellees.

*Opinion filed October 24, 1916.*

1. SCHOOLS—*right to attend school does not depend on legal domicile.* The schools are required by statute to be maintained for all persons in the school district over the age of six and under twenty-one years, and it is not essential to the right of a child to attend a public school that it should have a legal domicile in the place in which the school is held.

2. SAME—*what residence required to entitle a child to attend school.* The residence necessary to entitle a child to attend public school without payment of tuition is not such as would be required to establish a right to vote or which would fix the liability for the support of a pauper, but a residence, even for a temporary purpose, not solely to enjoy the benefits of the free schools and with the intention of removal as soon as that purpose is accomplished, is sufficient.

3. SAME—*what children entitled to attend school.* Every child of school age in Illinois is entitled, without payment of tuition, to attend the public school in the district in which it actually resides for the time being, whether that be its legal domicile or the legal domicile of its parents or guardian or not.

4. SAME—*children in orphans' home entitled to attend schools of the district where institution is located.* Children in an orphans' home of a fraternal organization, who have been delivered by

their parents or persons having their actual custody to the care of the orphans' home for the purpose of providing for their maintenance and rearing in the place where that home is located until they attain the age of fifteen years, with no present intention on the part of anybody having any authority or control over the minors that this residence shall be changed, are all actual residents of the school district where the orphans' home is located, and are entitled to attend, without paying tuition, the free schools of that district.

5. EQUITY—*what is not a misjoinder of complainants.* Where an order excluding children from school affects all the children alike and their claims are all governed by the same legal rule and involve similar facts, and where the right sought to be enforced is common to all, the children may all be joined as complainants in a bill to enjoin the enforcement of the excluding order.

6. SAME—*injunction a proper remedy where children are ordered excluded from school.* A bill to enjoin the enforcement of the excluding order is the proper remedy where children have been unlawfully ordered excluded from school, as the remedy at law by petition for *mandamus* would be incomplete and inadequate, in that during the pendency of the suit the children would be deprived of the advantages of attendance at school, thereby entailing a damage incapable of estimation at law and irreparable.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

JESSE E. ROBERTS, (ROBERTS & SWAIN, of counsel,) for appellants.

S. P. SHOPE, (F. S. McCLORY, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellants are seventy-nine children between the ages of six and fifteen years, inmates of the Illinois Masonic Orphans' Home situated in LaGrange, Illinois, and within school district No. 102, in the county of Cook, who filed a bill in the circuit court of Cook county against the board of education of the school district, its president and

members and the principal of the schools, to enjoin them from excluding the appellants from the schools of the district unless the Illinois Masonic Orphans' Home would pay tuition for them, in accordance with a resolution adopted by the board of education. The court sustained a demurrer to the bill and dismissed the bill for want of equity.

It appears from the bill that the Illinois Masonic Orphans' Home is a corporation organized under the laws of the State of Illinois, which is the owner of real estate in district No. 102, and has maintained on its said real estate a home for the support, care and custody of minor children between the ages of three years and fifteen years, the children of Master Masons, members of the Order of Ancient Free and Accepted Masons in Illinois, who have been committed to its care; that each of the appellants has no other home and lives and resides permanently in the Illinois Masonic Orphans' Home; that each of them has no money, property or other means of support and no parents or relatives able to give them the maintenance and care necessary for children of their ages, though in some instances one of the parents is living and in some both are living but the father is insane or in prison or has disappeared, but they are all provided with a home, food, clothing and care in the Illinois Masonic Orphans' Home at LaGrange by the trustees of said home, to which they have been voluntarily committed for the purpose of securing a home and the care and attention they require for their rearing and well being, their parents or other relatives or guardians having voluntarily surrendered the care, custody and control of the appellants to the home, where the appellants must remain under the control thereof, the parents, relatives or guardians of the appellants having so consented, until they are disposed of under the rules for the conduct and operation of such home, and they have not been sent there and are not there for the sole purpose of attending the public schools maintained in that school district under the laws of the

State of Illinois. Before March 20, 1911, the Illinois Masonic Orphans' Home had been located in the city of Chicago, but the Masonic Grand Lodge purchased the property upon which the home at LaGrange was erected and constructed a building thereon designed as a home for the children of Masons in the State of Illinois similarly situated to the appellants, having a capacity for accommodating about one hundred children, and on or about that date many of the appellants were taken from the home in Chicago to the home in LaGrange. Many of the appellants were residents of the county of Cook before their admission to the home, and all of them, as well as their parents, were residents of the State of Illinois. Upon the removal of the home from Chicago to LaGrange the inmates were admitted to the public schools of the school district without the payment of tuition or any demand therefor, and others who subsequently became inmates were also admitted to the schools in the same way and attended the schools without objection on the part of the school authorities until January 24, 1912, when the president of the board of trustees of the home was notified by the secretary of the board of education of the passage of a resolution by that board that after February 1, 1912, the trustees would be required to pay tuition at the rate of $35.08 per annum for each pupil attending the schools from the home, less the proportionate share of the school taxes paid by the home. The tuition not having been paid on March 7, 1913, the secretary of the board of education notified the president and trustees of the home that unless payment or provision for payment were made before March 24, 1913, the children from the home would be excluded from the schools.

The appeal is brought directly to this court because the appellants insist that the resolution of the school board is a violation of the right of the appellants to free admission to the public schools under the constitutional provision which requires the General Assembly to provide a thorough and

efficient system of free schools whereby all children of the State may receive a good common school education.

Among the duties imposed upon school directors by the statute they are required "to establish and keep in operation for at least seven months in each year, and longer if practicable, a sufficient number of free schools for the accommodation of all persons in the district over the age of six and under twenty-one years and to secure for all such persons the right and opportunity to an equal education in such schools." (Hurd's Stat. 1916, sec. 114, p. 2366.) The same obligation rests upon boards of education. (Hurd's Stat. 1916, sec. 127, p. 2370.) The appellees insist that only residents of the school district are entitled to the benefit of the schools without the payment of tuition; that the appellants are minors, who cannot voluntarily change their place of residence, and that their legal residence and domicile is in the place where their parents reside; that they are entitled to attend schools in district No. 102 only upon being transferred to such schools, in the manner authorized by law, from the district in which they reside, with the consent of the directors of both districts. On the other hand, the appellants contend that they are *bona fide* residents of district No. 102, and entitled, under the law, to attend the public schools.

It is not essential to the right of a child to attend the public schools of the State that it should have a legal domicile in the place in which the school is held. The schools are required to be maintained for all persons in the district over the age of six and under twenty-one years of age. The residence required under this language is not such as would be required to establish a right to vote or which would fix the liability of a township or county for the support of a pauper. The right to attend school is not limited to the place of the legal domicile. A residence, even for a temporary purpose, in a school district is sufficient to entitle children of school age to attend school. A man

may leave his home for a temporary purpose, and, according as the exigencies of his interests or his business or his public or private employment require or his pleasure dictates, may reside for a longer or shorter time in a different part of the State. He does not thereby lose his legal domicile or his right to vote there at elections. Should he become a public charge the town or county of his legal domicile would be liable for his support. His children, however, would not be obliged to attend school in the district of his domicile. Within the meaning of the School law they would be in the district of his temporary residence and entitled to attend school without the payment of tuition and without any transfer from the district of his domicile. The only requirement, so far as residence is concerned, is dwelling in the school district. Every child of school age in the State is entitled to attend the public schools in the district in which it actually resides for the time being, whether that be the place of its legal domicile or the legal domicile of its parents or guardian, or not. This has always been the view which has been held, so far as we are informed, by those charged with the administration of the School law. In Bateman's Common School Decisions (ed. of 1890, p. 135,) it is said: "As a general rule, the residence of parents is the residence of their children. Boarding children in a district does not, of itself, entitle them to the benefits of the free school in said district. The mere temporary residence of a family in a district, solely to enjoy the benefits of the free schools and with the intention of removal as soon as that purpose is accomplished, does not entitle the children to the privileges of said schools. The removal of a portion of a family from the legal domicile to another district in order to send to the free schools thereof does not confer the right to do so. As a general rule, the residence of their parents is the residence of employees; hence the privilege of the free schools

in another district is not acquired by placing children temporarily at service in that district. This includes those who are placed in families to attend school and do chore-work for their board, etc. The most liberal policy is, however, recommended toward this class of children. The State has as much interest in their education as in that of the more favored, and although not legally eligible to attend free, the directors should permit them to do so when not inconsistent with the rights of others and the welfare of the school. Children who have been apprenticed or adopted into a new family or who have been placed permanently in the care of others with no intention of withdrawal, or those over whom parents have relinquished all control from whatever cause, or those who have no parents or guardians or whose parents or guardians live in another State or country and exercise no control over their children, or those who have no permanent abode but go from place to place in search of employment and whose only home is where they find work,—the children included in all the above classes are to be enumerated in the district where they live and are entitled to all the rights and benefits of the free schools in said district."

The appellants are all actual residents of school district No. 102 in the ordinary and popular meaning of that term. They have no other home. They have lived there for some time with the intention of remaining indefinitely and have no present intention of going elsewhere. They were delivered by their parents or relatives or persons having their actual custody to the care of the Illinois Masonic Orphans' Home for the purpose of providing for their maintenance and rearing in the place where that home is located until they attained the age of fifteen years, and there is no present intention on the part of anybody having any authority or control over the minors that this residence should be changed. In the case of poor persons it is frequently necessary, particularly when one of the parents is dead or disabled or for any reason cannot or will not assist in the

support of his family, that homes shall be found for the children in places other than those where the parents reside, and under such circumstances the child is entitled to be enumerated among the school children and to attend the school in the district in which it actually resides, as a matter of right, not dependent upon the payment of tuition by the school district in which the parents reside or the consent of the directors of that school district or of the directors of the district in which such child actually resides. Cases have been cited from other States for and against this position. They are of little value in the determination of this question in the construction of our own statute.

The appellees insist that the bill was properly dismissed because of the misjoinder of the complainants. The right sought to be enforced by the bill is common to all the complainants. The order excluding them affects them all alike. Their claims are all governed by the same legal rule and involve similar facts. They were properly joined in the bill. (*City of Chicago* v. *Collins,* 175 Ill. 445.) *Mandamus* would not afford a complete and adequate remedy at law. An action of *mandamus* could only be sustained after the board of education had excluded the appellants, for the purpose of requiring the board to re-instate them or permit them to return to the school. In the meantime, during the pendency of the suit, appellants would be deprived of the advantages of attendance on school,—a damage incapable of estimation at law and irreparable.

The decree of the circuit court will be reversed and the cause remanded, with directions to overrule the demurrer to the bill.

*Reversed and remanded, with directions.*