WILLIAM C., a Minor, *et al.*, Plaintiffs-Appellees, *v.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (1st Division)    No. 77-1520

Opinion filed May 14, 1979.

Michael J. Murray, of Chicago (Richard E. Girard and Edward C. Peterson, of counsel), for appellants.

David P. Kula, Esq., of Anthony Scariano & Associates, P. C., of Chicago, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal originating from a writ of mandamus filed in the name of two trainable mentally handicapped children (Ill. Rev. Stat. 1975, ch. 122, par. 14—1.05), William C. and Steven W., by their parents and legal guardians to require either defendant Board of Education of the City of Chicago (hereafter Board) or defendant Special Education Cooperative of South Cook County (hereafter Speed) to undertake financial responsibility for the provision of special education services to the plaintiffs. The trial court ruled that the defendant Speed should educate the children at the defendant Board's cost. Only the defendant Board brings this appeal.

We affirm.

In 1969, the Board, after conducting diagnostic and psychological tests of William C., concluded that William was in need of special education. As the Board did not have a program in which to enroll him, a

placement was arranged for William to attend the Mary Alyce School, a private special education facility in Chicago at the Board's cost. (Ill. Rev. Stat. 1975, ch. 122, par. 14—7.02.) William attended this school while he lived at home with his parents in Chicago and also after he moved to the Elizabeth Ludeman Development Center (hereafter Ludeman) in Park Forest, Illinois. In 1976, the Mary Alyce School informed William's parents that the school could no longer retain William in their program because his needs exceeded their facility's services. At that time, his parents obtained a placement for him with the Speed school district. Speed is a joint agreement special education school district (Ill. Rev. Stat. 1975, ch. 122, par. 10—22.31) serving several south side communities, including Park Forest where the Ludeman school is located. William attended the Speed program from May to June of 1976 and planned to attend the 1976-1977 school year. However, although Speed initially approved his attendance, they ultimately refused to enroll him. Speed took this action because the Board refused to reimburse Speed for William's participation in their program from May to June of 1976 and would not sign forms authorizing William's attendance in the program for the upcoming school year to insure section 14—7.02 reimbursement. This action was contrary to the Board's assurance to William's parents that it would continue reimbursement when William entered the Speed program. As a result of this action, William did not receive any educational services for the 1976-1977 year.

Similarly, Steven W., also adjudged ineligible for the Board's special education classes, attended private special education programs in Chicago until August 1975, when he moved to Ludeman. In 1976 it was determined that Steven would benefit from a resumption of his class work. In that Steven suffers frequent seizures, his parents and the Ludeman personnel sought to place him with Speed as it was the closest program to the Ludeman school. Speed refused to enroll him on the basis that the Board decided not to grant reimbursement, although it had paid for his attendance at the Chicago program. As in William's case, the result of the Board's action served to deny Steven any educational services for that school year.

The plaintiffs' suit alleged that they were entitled to a free education pursuant to section 14—1 *et seq.* of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 14—1 *et seq.*) and the Education for all Handicapped Children Act of 1975 (20 U.S.C. §1411 *et seq.* (1975)). Accordingly, plaintiffs sought educational services from the defendant Board under section 14—4.01 and 14—7.01 of the School Code (Ill. Rev. Stat. 1975, ch. 122, pars. 14—4.01 through 14—7.01) or in the alternative from defendant Speed under section 14—7.03 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 14—7.03).

Section 14—4.01 provides:

"School boards of any school districts that maintain a recognized school, whether operating under the general law or under a special charter, may until July 1, 1969, and shall thereafter, subject to any limitations hereinafter specified, establish and maintain such special educational facilities as may be needed for one or more of the types of handicapped children defined in Sections 14—1.02 to 14—1.07 of this Article who are residents of their school district, and such children, residents of other school districts as may be authorized by this Article."

Section 14—7.01 provides in part:

"If a child, resident of one school district, because of his handicap, attends a class or school for any of such types of children in another school district, the school district in which he resides shall grant the proper permit, provide any necessary transportation, and pay to the school district maintaining the special educational facilities the per capita cost of educating such children."

Section 14—7.03 provides in part:

"If a school district maintains special education classes on the site of orphanages and children's homes, or if children from the orphanages, children's homes, foster family homes, other state agencies, or State residential units for children attend classes for handicapped children in which the school district is a participating member of a joint agreement, or if the children from the orphanages, children's homes, foster family homes, other state agencies, or State residential units attend classes for the handicapped children maintained by the school district, then reimbursement shall be paid to eligible districts in accordance with Section 14—12.01 * * *."

The issue concerning which school district was responsible under the School Code to provide plaintiffs with an education arose from a difference of opinion between the two districts over the definition of the term "residence" utilized in the above provisions. In resolving that issue, the trial court stated:

"The school district of the residence of the parents of voluntarily placed children in residential institutions who are not wards of the state is the school district responsible either for financial payment of the cost of the education of such children under Ill. Rev. Stat. Section 14—7.01 or the provision of said services under Ill. Rev. Stat. Section 14—4.01."

Because the Speed program was stipulated to be the only appropriate placement for the children, the court ordered Speed to enroll the

plaintiffs in its program for the 1977-1978 school year rather than the Board. Chicago, as the financially responsible school district, was ordered to pay for the cost of these educational services. In so ruling, the trial court rejected the Board's contention that section 14—7.03 rather than section 14—7.01 was applicable to these facts.

On appeal, the Board raises two issues: (1) whether the trial court properly identified Chicago as the children's legal residence for school purposes; and (2) whether the trial court construed sections 14—4.01, 14—7.01, and 14—7.03 in determining which school district was responsible for providing an education to children, like the plaintiffs, who live in a state residential school located in one district while their parents live in another district.

These same issues were raised in *School District No. 153 v. School District No. 154½* (1977), 54 Ill. App. 3d 587, 370 N.E.2d 22, recently decided by this court. In *School District No. 153*, Ms. Cissell, a handicapped minor voluntarily placed at Ludeman, was denied enrollment in a facility operated by the Echo Cooperative (hereafter Echo), a joint agreement school district serving the district in which Cissell's parents resided. Echo denied her admission predicated on the fact that, inasmuch as her legal residence was Ludeman and not that of her parents, it did not serve her school district. However, when Ludeman attempted to enroll her in the Speed school district which served Ludeman it denied that it had any responsibility to educate the child alleging that a child is a resident, not of the place where he attends school, but rather under a traditional analysis, where his parents are residents.

The trial court held that a handicapped child, like any child, is a legal resident of his parent's school district and that this school district should provide his education. The court went on to note, that where the responsible school district is unable or unwilling to provide a child with his necessary educational services, but the school district in which the child's residential school is located could provide him with an educational program, it must do so. The provider school district would thereafter be reimbursed for its costs by the responsible school district. This court affirmed. In doing so, defendant Echo's argument that the State was under an obligation to reimburse Speed's cost of educating Ms. Cissell pursuant to section 14—7.03 was rejected. This court also rejected the defendant's assertion that it was not the financially responsible school district because under 14—7.03 a child living in a Department of Mental Health facility is automatically rendered a resident of that facility for school purposes or, in the alternative, that a child living in a residential school is a resident of that district under a traditional residence analysis because his parents exert no custody and control over him.

Here, the defendant Board has failed to state any compelling reason

why we should reverse the decision in *School District No. 153 v. School District No. 154½* (1977), 54 Ill. App. 3d 587, 370 N.E.2d 22, or why we should not be guided by the reasoning in that decision. Furthermore, the Board has not made any attempt to distinguish the facts or issues involved in that case from those presented here, nor do we perceive any distinguishable differences.

However, the Board has made certain arguments in its brief which warrant discussion. The Board contends that the plaintiffs were not residents of the Chicago School District and as such section 14—7.01 is not applicable. We do not agree. In *School District No. 153*, this court recognized that "[t]he general rule is that children, presumptively, are residents of the school district wherein their parents reside; however, for school purposes, this presumption may be rebutted. [Citations.]" (54 Ill. App. 3d 587, 591.) In that decision Echo, as the district of parental residence, was presumptively also the child's school district. Accordingly, where there was no evidence to reveal that Cissell's parents failed to assert custody or control over her, this court held Echo legally responsible for the child's education. The Board does not state any facts which indicate that the parents in this case did not have custody or control over their children. The only facts pertinent to this issue are that neither child was a ward of the court nor was either involuntarily committed to Ludeman. This would indicate that each parent did retain custody and control over their child after he was placed at Ludeman. (*School District No. 153*; see *Dean v. Board of Education* (1944), 386 Ill. 156, 53 N.E.2d 875; *Ashley v. Board of Education* (1916), 275 Ill. 274, 114 N.E.20.) Moreover, the record indicates that the parents of both children took great pains and displayed a great deal of persistence in obtaining placements for their children which further indicates their custody.

■■ The defendant next argues that a school district's responsibility to educate a child pursuant to section 14—4.01 is not based on the child's legal residence but rather on the child's physical presence within a school district. Under this view, Speed and not the Board would be responsible for the plaintiffs' education. This argument is inapposite to the decision in *School District No. 153*. Had this court thought that mere residence, rather than legal residence determined a school district's responsibility under section 14—4.01, Speed could have been held responsible for both educating and financing Ms. Cissell's education. This court clearly would not have required Echo to reimburse Speed for its costs. Additionally, the Board's own behavior in financing William C's education, while he was living at Ludeman but attending the Mary Alyce School, indicates that the Board recognized that legal residence and not mere presence was the key to affixing financial responsibility under the School Code.

■■ The Board also denies the applicability of section 14—7.01 on the

ground that this provision is limited to those instances where a child travels to another school district for classes and then returns home each night. As support for this proposition, the Board points out that this section requires a resident school district to supply transportation for the commuting child if such transportation is necessary evidencing the legislature's intent that this section be narrowly interpreted. Section 14—7.01 is applicable where "a child, resident of one school district, because of his handicap, attends a class or a school * * * in another school district * * *." As the holding in *School District No. 153* indicates, this section is not limited to day students who receive education outside their own school district. Rather, the legislature in enacting this section probably recognized that some school districts because of their size cannot afford to provide special education facilities for every type of handicap and therefore must frequently send their residents elsewhere to obtain an education. To provide that a school district should have to pay for day students who attend a class or school in another district but not reimburse districts educating their residents as residential students is inconsistent with the policy decision of the legislature to require local school district financing of special education. Ill. Rev. Stat. 1975, ch. 122, par. 14—4.01.

■ The Board argues that this court erred in *School District No. 153* when the court did not find section 14—7.03 applicable. In that decision it was explained that section 14—7.03 was inapplicable in that:

"It is clear from a reading of this statute that it is primarily a reimbursement provision, addressing itself to the special education of children residing in orphanages, foster homes, children's homes or state agencies. The statute is not applicable in the instant case inasmuch as Miss Cissell has a responsible parent who continues to exercise custody and control over her." (54 Ill. App. 3d 587, 591.)

The Board claims that a plain reading of this section does not suggest that its applicability is limited to instances where an orphan's education is at stake. We agree. However, we do not share the Board's view that because nonorphans may have the cost of their education reimbursed by the State under this provision that this means that the State is required to finance the education of every child living in an orphanage, foster home, children's home, state agency or residential unit. The legislature, in section 14—4.01, has seen fit to require individual school districts to finance the special education of their residents. While this general scheme is "subject to any limitations hereinafter specified" (Ill. Rev. Stat. 1975, ch. 122, par. 14—4.01), that limitation does not warrant the conclusion that the State has decided to pay for children who have responsible school districts to finance their education simply because they happen to live in the above mentioned facilities.

It is argued that this interpretation of the School Code will cause the Board to lose a great deal of money because it will not be able to obtain reimbursement for its educational costs under section 14—13.01. (Ill. Rev. Stat. 1975, ch. 122, par. 14—13.01.) However, as the Board admitted at oral arguments, they have not attempted to verify this assertion. Moreover, it is not our obligation to reinterpret section 14—7.03 on that basis. If the legislature wants to alter our interpretation to correct what the Board suggests is a grave injustice, then it will do so. The legislature has taken no such action since this court's decision in *School District No. 153.*

The Board's final contention is that this construction of section 14—7.03 ignores the local and national trend away from financing education from real estate taxes as well as the State's constitutional obligation to take "primary responsibility for financing the system of public education." (Ill. Const. 1970, art. X, §1.) Either of these factors, contends the Board, would warrant a finding that section 14—7.03 should be read to apply to any child living in a facility named in that section. While we agree that the legislature could constitutionally decide to finance a greater portion of the cost of special education, we do not think that it has chosen to do so in this instance.

For the aforesaid reasons we affirm the finding of the circuit court of Cook County.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.