# Illinois Official Reports

## Appellate Court

---

**Gwozdz v. Board of Education of Park Ridge-Niles School District No. 64,**
**2021 IL App (1st) 200518**

---

| | |
|---|---|
| Appellate Court Caption | GRZEGORZ GWOZDZ and ANNA GWOZDZ, Individually and on Behalf of M.G., a Minor, Plaintiffs-Appellants, v. THE BOARD OF EDUCATION OF PARK RIDGE-NILES SCHOOL DISTRICT NO. 64 and DR. LAURIE HEINZ, as Superintendent of the Park Ridge-Niles School District No. 64, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>No. 1-20-0518 |
| Filed | March 5, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-10555; the Hon. Sanjay Tailor, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Adam J. Augustynski, of Chicago, for appellants.<br><br>Babak Bakhtiari and Kevin P. McKeown, of Hodges, Loizzi Eisenhammer, Rodick & Kohn LLP, of Arlington Heights, for appellees. |

Panel                    JUSTICE HARRIS delivered the judgment of the court, with opinion.
                         Justices Connors and Oden Johnson concurred in the judgment and
                         opinion.


**OPINION**

¶ 1      Plaintiffs, Grzegorz Gwozdz and Anna Gwozdz, appeal the circuit court's order affirming
the finding of the Board of Education of Park Ridge-Niles School District No. 64 (Board) that
plaintiffs' daughter, M.G., was not a legal resident of the district during the 2017-18 school
year. On appeal, plaintiffs contend that (1) the Board and hearing officer relied on insufficient
and immaterial facts in making their determinations and disregarded the relevant issue of the
plaintiffs' intent and (2) the circuit court applied an incorrect analysis of the law to the facts of
the case. For the following reasons, we affirm.

¶ 2                                    I. JURISDICTION
¶ 3      The circuit court entered its order affirming the Board's decision on January 10, 2020, and
plaintiffs filed a motion to reconsider. The court denied the motion on February 21, 2020.
Plaintiffs filed their notice of appeal on March 16, 2020. Accordingly, this court has
jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff.
July 1, 2017), governing appeals from final judgments entered below.

¶ 4                                    II. BACKGROUND
¶ 5      During the 2017-18 school year, M.G. was enrolled as a seventh-grade student at Emerson
Middle School, which is a public school located within the boundaries of Park Ridge-Niles
School District No. 64 (District). In documents provided to the District, M.G.'s address was
listed as 7544 W. Oakton Street in Niles, Illinois. The property is a large two-story building
with commercial businesses on the first floor and residential apartments on the second floor.
School officials had questions about M.G.'s residency after viewing the lease her family
provided as proof of residency. The District's business specialist, Vanessa Azra, found the
lease "odd" because it was a lease from the family to itself, it was a 10-year lease, and the rent
level never changed.

¶ 6      As part of its residency verification process, the District utilizes CLEAR, a software
product from Thompson Reuters that identifies students with potential residency issues.
According to Brian Imhoff, the District's assistant business manager, the District's use of the
program means it only needs to review about 25% of the residency documentation, as opposed
to 100%. After the 25% are identified, the District looks into the data and in many instances it
can rule out a problem. The remaining cases are given further review. Imhoff declined to list
every factor the District uses in determining whether a student's residency is suspect.

¶ 7      The CLEAR program found another address for plaintiffs in Des Plaines, which is out of
the District's boundaries. The information showed that the family owned two properties: one
in Des Plaines and the other, the building in Niles. As a result, M.G.'s residency was identified
as potentially suspect. Luann Kolstad, the District's business manager, could not confirm
M.G.'s in-district residency so she authorized an investigator to look further into the matter.

¶ 8    Jim Zarnick conducted surveillance on May 2, 3, 4, 7, and 8, 2018, at the out-of-district residence located at 1055 S. River Road in Des Plaines, Illinois. He made notations and took photos of the family, including M.G. and her older brother, leaving and entering the Des Plaines residence throughout the day. On the three nights he observed the Des Plaines residence, Zarnick saw the family entering the house and remaining there late into evening when he left for the night. He also observed the family leaving the house early the next morning. Zarnick "spot-checked" the Niles building and found none of the family's vehicles at that location.

¶ 9    Zarnick also saw M.G. being dropped off at a convenience market near the school, not at the actual school. He implied that it was to avoid suspicion from the school as to why M.G. would need to be dropped off when the apartment was only a few blocks from the school. Zarnick acknowledged, however, that he did not know why M.G. was dropped off at the market.

¶ 10    After receiving Zarnick's report, and considering all of the available information, Kolstad's staff issued a letter on May 16, 2018, informing plaintiffs of the District's determination that M.G. was not a district resident. Its determination was based on evidence the District obtained through its investigation "including, but not limited to: (1) surveillance conducted by a private licensed investigator on multiple dates; and (2) Clear Batch Processing flagging [plaintiffs'] address information and (3) questionable residency documents presented at the school." The letter requested that plaintiffs contact the District to meet with the superintendent within seven days to discuss the matter. The letter further stated that after the meeting, if plaintiffs did not agree with the determination, they could request a hearing before the Board's hearing officer. Kolstad invited the family to respond.

¶ 11    In a May 18, 2018, letter, plaintiff's attorney made a formal demand for a hearing. Plaintiffs also demanded a meeting with Kolstad and Azra within seven calendar days of the letter. The letter requested that prior to the meeting, the District provide "a true copy of all video and paper reports and Illinois license relating to the alleged 'surveillance conducted by a licensed private investigator on multiple dates,' the full file of 'CLEAR batch processing' and the purported purpose of this entity and each and every document Ms. Kolstad alleges is 'questionable' and a specific list of her training and qualifications which would allow her to opine on such matters." Plaintiffs thereafter met with Kolstad and the superintendent.

¶ 12    On May 25, 2018, the District acknowledged in a letter that plaintiffs requested a formal hearing. The District informed plaintiffs that a hearing would be scheduled for June 7, 2018. The letter stated that "[a]t least 3 calendar days before the hearing, both parties must disclose to each other all written evidence and testimony that it will submit during the hearing and a list of witnesses that it may call to testify during the hearing."

¶ 13    Plaintiffs testified at the hearing that they owned the building in Niles and operated a flower business on the first floor. Other commercial spaces on the first floor were rented to other businesses. The second floor of the building consisted of eight apartments, seven of them rented to others. Apartment 2, which plaintiffs kept for themselves, has been the family's primary residence since December 2012. Plaintiffs also owned a single-family home in Des Plaines, outside of the school district.

¶ 14    Apartment 2 in the Niles building is a one-bedroom, one-bathroom apartment. Mr. Gwozdz testified that M.G. and her brother, who had just finished his junior year at Maine South High School, shared the bedroom while he and his wife slept in the family room. He testified that

their flower business required long hours of work and the apartment's convenient location was ideal for when they needed to work extended hours. The location was also close to the District's middle school, which was convenient for meeting M.G.'s needs during working hours. The family purchased the property in an LLC, which had plaintiffs as its only members. Plaintiffs signed a lease for Apartment 2 with the LLC and paid monthly rent in accordance with the lease. The LLC's account register, however, did not show rent checks being deposited. The register also showed that the check numbers of the rent checks presented were "substantially out of range relative to the rent checks for the same time frame."

¶ 15    Mr. Gwozdz testified that M.G. was responsible for the family's laundry and because the apartment had no laundry facilities, they used the washer and dryer at the Des Plaines house. He stated that on laundry days, he would drop her off at the house and she would remain there until the laundry was finished. He further testified that except for periodic overnight stays with her grandmother in Chicago, or an odd late night at the Des Plaines house, M.G. always stayed at the Niles apartment for the night.

¶ 16    Plaintiffs also presented documents in support of their residency. They included photographs of the apartment showing various family members therein. Other photographs showed rooms being renovated, presumably from the Des Plaines residence, to demonstrate that the Des Plaines house was unavailable as a residence. Mr. Gwozdz testified that he took the pictures within the past 10 to 14 days. Plaintiffs also provided photographs of large rental decorative items which their business provides for weddings and parties. Mr. Gwozdz testified that these items are stored at the Des Plaines residence.

¶ 17    The documents included M.G.'s vaccination record, which listed the Niles address, and mail from a credit union where plaintiffs and M.G. had accounts, which also listed the Niles address. There was also a Home Depot credit card statement mailed to plaintiffs at that address. Mr. Gwozdz's driver's license had 7544 W. Oakton St. Apt. 2 in Niles as his address. Documents relating to the family's business and mailed to the Niles address were presented, as were some electric bills from earlier in 2018. Plaintiffs presented utility bills from 2014, which the hearing officer found irrelevant because they were outside the relevant time period. Documents also showed that the family recently reregistered their vehicles to the Niles address, and that M.G. had a Niles library card.

¶ 18    Mr. Gwozdz acknowledged that although he stated the family moved into the apartment in December 2012, they continued to have M.G. enrolled in a school located in the Des Plaines School District through the end of the 2015-16 school year.

¶ 19    At the hearing, the District presented the lengthy reports from CLEAR on the plaintiffs, the investigator's report and photographs, and registration documents and materials. Kolstad did not identify any one factor that was conclusive in the District's determination but stated it was a combination of factors including the lease and rent checks, M.G.'s enrollment in a Des Plaines district school for several years after the family stated it moved to the Niles address in 2012, and the likelihood the family lived in a one-bedroom, one-bath apartment when there was a larger single family home in Des Plaines. When asked by plaintiffs' attorney whether she would visit the apartment to see if the family resided there, Kolstad suspected it was quite likely the family actually lived in the apartment now that they knew of the District's surveillance. Kolstad testified that in her experience, families under suspicion of residency issues tend to alter their behavior once they learn of the District's investigations. Azra, Imhoff,

and Zarnick also testified at the hearing and made statements consistent with the information attributed to them in the preceding paragraphs.

¶ 20    The hearing officer found that plaintiffs made a "thin" *prima facie* case of residence in the District by plaintiffs' testimony and a showing of some mail sent to the Niles address. The burden thus shifted to the District to disprove residency, which the officer found was done by evidence that was "both persuasive and voluminous." He believed "the complete truth of the situation is that the family somewhat fluidly moves about between the Des Plaines house and the Niles apartment, based on their needs and their schedules on a day to day basis." He found, however, that "[t]he test is one of residence" and "no one factor, standing alone, determines a student's residence in and of itself."

¶ 21    The hearing officer did not find the family's testimony that M.G. spent all her nights at the apartment credible, citing the investigator's report. When confronted with evidence that the family spent nights at the Des Plaines home, they responded that M.G. slept at the Niles apartment except for those nights. He also pointed to evidence that M.G. was enrolled in a Des Plaines district school through the 2015-16 school year, even though the family testified that they moved to the Niles apartment in 2012. He believed that the family was "willing to tell school officials what is expedient, rather than what is true." While the District's evidence was not "wholly conclusive," it did "overwhelmingly suggest[ ] that the family's primary base of operations is Des Plaines, not Niles." He found that evidence "unrebutted." The hearing officer concluded that M.G. was a resident of Des Plaines during the 2017-18 school year, and not a resident of the Park Ridge-Niles District. "As such, the District must charge tuition for her attendance during the just completed school year."

¶ 22    On June 25, 2018, the Board reviewed the findings and determination of the hearing officer, and considered the written objections submitted by plaintiffs' attorney. The Board adopted and incorporated the hearing officer's findings and written decision and affirmed the determination that M.G. was not a resident of the District during the 2017-18 school year. Pursuant to section 10-20.12b(c) of the School Code (105 ILCS 5/10-20.12b(c) (West 2016)), plaintiffs appealed the Board's decision to Dr. Bruce R. Brown, the regional superintendent of schools for Northern Cook County. On July 19, 2018, Dr. Brown affirmed the Board's determination.

¶ 23    On August 20, 2018, plaintiffs filed a "Petition for Writ of Certiorari and Complaint for Declaratory Judgment" in the circuit court. Defendants filed a motion to strike and dismiss the complaint, which the circuit court granted, although the court allowed plaintiffs an opportunity to amend the complaint. Plaintiff's amended complaint challenged the Board's determination in count I by writ of *certiorari* and sought a declaratory judgment in count II. The circuit court subsequently dismissed count II with prejudice and ordered defendants to produce the record of proceedings in order to move forward with count I pursuant to administrative review.

¶ 24    On January 10, 2020, after a hearing, the circuit court affirmed the superintendent's decision to affirm the Board's determination. Plaintiffs filed a motion to reconsider, which the circuit court denied. Plaintiffs filed this appeal.

¶ 25                                              III. ANALYSIS

¶ 26    As an initial matter, we consider defendants' motion to strike plaintiffs' brief which we have taken with the case. In the motion, defendants contend that plaintiffs' statement of facts is "argumentative, conclusory, and riddled with deceptive and misleading commentary that is not supported by the record." Defendants also contend that the argument section is conclusory,

"premised on conjecture," and not supported by the record. They argue that plaintiffs' brief violates Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) and should be stricken.

¶ 27   Rule 341 provides that the statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Furthermore, the argument section "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The Supreme Court Rules are not merely suggestions, as "Rule 341's mandates detailing the format and content of appellate briefs are compulsory." *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 18. This court, in its discretion, may strike an appellant's brief and dismiss an appeal for failure to comply with Rule 341. *Fryzel v. Miller*, 2014 IL App (1st) 120597, ¶ 25.

¶ 28   Plaintiffs' brief fails to comply with Rule 341 where there is not a single citation to the record. This court expects the parties to present their arguments clearly, with support from citations to authority and the record, so that we can ascertain and properly dispose of the issues involved. *Burrell v. Village of Sauk Village*, 2017 IL App (1st) 163392, ¶ 14. This court is "not a depository in which the appellant may dump the burden of argument and research." (Internal quotation marks omitted.) *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23. We choose, however, to review the merits of this appeal since we can discern the issues from the parties' arguments and gather the relevant facts from defendants' brief in conjunction with the record. See *In re Estate of Jackson*, 354 Ill. App. 3d 616, 620 (2004) (reviewing court may choose to consider the appeal, even in light of Rule 341 violations). While we do not strike plaintiffs' brief as a whole, we need not consider any statement that is argumentative nor any contention made without citation to authority or reference to the record. *Burrell*, 2017 IL App (1st) 163392, ¶ 15.

¶ 29   Plaintiffs sought judicial review of the Board's determination pursuant to a writ of *certiorari*. Where the enabling statute does not adopt Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)) or provide a method for reviewing an agency's decisions, a writ of *certiorari* is an available method of review. *Dubin v. Personnel Board*, 128 Ill. 2d 490, 498 (1989). In this context, review of a writ of *certiorari* is "essentially the same" as review of a petition to the circuit court filed under Administrative Review Law. *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 337 (2009). As such, this court reviews the decision of the Board rather than that of the circuit court. *Lindemulder v. Board of Trustees of the Naperville Firefighters' Pension Fund*, 408 Ill. App. 3d 494, 500 (2011). Accordingly, any claims of error attributed to the circuit court, including plaintiffs' claim that the circuit court improperly applied the law to the facts of this case, are misplaced since this court does not review the determination of the circuit court. See *Outcom*, 233 Ill. 2d at 337. We do, however, consider plaintiffs' contention that the Board erred in finding that M.G. did not reside in the district.

¶ 30   Under Administrative Review Law, the Board's findings of fact are considered *prima facie* true and they will not be reweighed by a reviewing court. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50. Therefore, we will not reverse the Board's fact findings unless they are against the manifest weight of the evidence. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272-73 (2009). A factual determination is against the manifest weight of the evidence if the opposite conclusion is

clearly evident. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008).

¶ 31     The Board's ultimate determination that M.G. was not a district student, however, is a mixed question of law and fact. See *Mina v. Board of Education for Homewood-Flossmoor*, 348 Ill. App. 3d 264, 272 (2004). "[A] mixed question asks whether the facts satisfy the statutory standard or whether the rule of law as applied to the established facts is or is not violated." *Beggs*, 2016 IL 120236, ¶ 50. A mixed question of law and fact is reviewed under the clearly erroneous standard. *Exelon*, 234 Ill. 2d at 272-73. A determination is clearly erroneous if the reviewing court " 'is left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 32     Section 10-20.12b of the School Code provides that "only resident pupils of a school district may attend the schools of the district without payment of the tuition required to be charged under Section 10-20.12a." 105 ILCS 5/10-20.12b (West 2016). "The residence of a person who has legal custody of a pupil is deemed to be the residence of the pupil." *Id.* § 10-20.12b(a)(1). Section 10-20.12b, however, does not define "residence." In other contexts, Illinois courts have defined "residence" as "a permanent abode or home in a particular place." *Miller v. Police Board*, 38 Ill. App. 3d 894, 897 (1976) (cases cited therein). They have found that a person establishes a residence in a particular place, if he or she has "a physical presence there and [has] the intent to make that location his [or her] permanent residence." *Id.* at 898. However, our courts have long held that the term "residence" for school district purposes is not limited to a parent's legal domicile.

¶ 33     In the seminal case of *Ashley v. Board of Education*, 275 Ill. 274 (1916), the appellants were 79 children who resided at the Illinois Masonic Orphans' Home (Home) in La Grange, Illinois. The property was purchased by the Illinois Masonic Orphans' Home corporation for the purpose of housing and caring for these children. Although many children had living parents, it was undisputed that all of them resided permanently in the Home. The Home was previously located in Chicago, and the children living in the Home moved from Chicago to the La Grange property after it was purchased. *Id.* at 276-77. After the move to La Grange, the children attended public school in the district without payment. The following year, however, the Board of Education passed a resolution requiring that tuition be paid in the amount of $35.08 per student per year. The appellants challenged the decision, arguing that they were *bona fide* residents of the district and thus entitled by law to attend the district's public schools. *Id.* at 277-78.

¶ 34     The supreme court disagreed with the Board's contention that as minors, the children's legal residence and domicile was Chicago, the place where their parents lived. The children received food and clothing from the Home in La Grange, and the Home also provided them with "the care and attention they require for their rearing and well-being." *Id.* at 276. The court also noted that the children were not sent to the Home "for the sole purpose of attending the public schools maintained in that school district." *Id.*

¶ 35     The court reasoned that residency for school purposes is not the same "as would be required to establish a right to vote, or which would fix the liability of a township or county for the support of a pauper." *Id.* at 278. If a parent temporarily resides in a different part of the state, due to the exigencies of interests or business, the children are not obligated to attend school in

the district of the parent's domicile. *Id.* at 279. Rather, "[t]he only requirement, so far as residence is concerned, is dwelling in the school district." *Id.* The establishment of such a residence, even for a temporary purpose, is sufficient to entitle children to attend school in the district. *Id.* at 278. This is true, however, only if the temporary residence was not established for the sole benefit of attending free schools. *Id.* at 279.

¶ 36    In *Connelly v. Gibbs*, 112 Ill. App. 3d 257 (1983), the parents owned a home in Chicago where they had lived with their five children for the past 15 or 16 years. One of their children was hearing-impaired, and although the child attended school in Chicago through his elementary years, his parents had concerns about the quality of his education at the Chicago high school in their district. They sought his admission into a hearing-impaired program at a nearby suburban high school, but their application was denied. The parents then informed the school district that they had signed a contract to purchase a condominium within the district. The school, however, received information that the family had not moved into the condominium, and when asked about it, Mrs. Connelly said that her husband and son would live in the condominium during the week, while Mrs. Connelly and the rest of the family remained at their Chicago home. The District determined that they failed to meet the residency requirements. *Id.* at 259-60.

¶ 37    The family challenged the decision and presented the following evidence at the hearing: phone bills, a library card, a vehicle registration sticker, income tax returns, an insurance policy on the condominium, and a voter's registration card. They also testified that the condominium was near Mr. Connelly's place of work. The trial court found that they were residents of the district. *Id.* at 277-78. The appellate court, however, reversed the trial court's determination.

¶ 38    The court noted that intent is the "critical question in determining residence" and that a person's acts are given more weight than his or her declarations. *Id.* at 262 (citing *Miller*, 38 Ill. App. 3d at 898)*.* It found that the family's actions "evidenced an intent, contrary to their declared intent, to retain their permanent residence in Chicago." *Id.* The Chicago home was the family's "home base." *Id.* Mr. Connelly and his son spent nights at the Chicago home and would forward calls from the condominium residence to the Chicago residence. Even when they spent nights at the condominium, they would drive to the Chicago residence to have breakfast, and the son would spend the afternoons after school in Chicago to be supervised by his mother. Mr. Connelly would return to the Chicago residence for dinner and then he and his son would drive to the condominium to spend the night. *Id.* at 262-63.

¶ 39    The court found that even though the family offered justifications for living in the condominium other than to obtain tuition-free education for their son, their reasons did not hold up under scrutiny. The family claimed that living in the condominium would help their son develop daily living skills and become independent. However, the evidence showed that the teenager was never left alone and he continued to eat the majority of his meals with his family in Chicago. They also claimed that the condominium was convenient to Mr. Connelly's workplace. *Id.* at 264. Although the court accepted that a second residence may be established temporarily for exigent purposes, it found "no justification for upholding the establishment of a second parental residence for school purposes which is only minutes away from the true parental residence." *Id.* The court concluded that "the true motivating factor" for the family's move into the district was to obtain tuition-free education for their son, conduct which the supreme court condemned in *Ashley*. *Id.*

¶ 40    Pursuant to *Ashley* and *Connelly*, when determining one's residence for school district purposes we consider not only the dwelling place of the family, but also whether that place is the family's intended "home base" for day to day living and care of the child. Importantly, the establishment of the residence must not be for the sole intent of attending free school in the district. *Ashley*, 275 Ill. at 279. "In determining intent, a person's acts are to be given more weight than [his or] her declarations." *Mina*, 348 Ill. App. 3d at 275.

¶ 41    Here, the Board adopted the hearing officer's findings and conclusion. The hearing officer found that plaintiffs leased an apartment in the Niles building and received some mail there. Photographic evidence showed that the family spent time in the apartment. The apartment was located above the family's flower business where plaintiffs spent long hours at work. Mr. Gwozdz explained that the apartment's convenient location was ideal for when they needed to work extended hours. The location was also close to the District's middle school, which was convenient for meeting M.G.'s needs during working hours.

¶ 42    The hearing officer, however, did not find plaintiffs credible. Although Mr. Gwozdz had stated that M.G. spent all of her nights at the apartment, Zarnick's surveillance at 1055 S. River Road in Des Plaines showed M.G. and her older brother leaving and entering the Des Plaines residence throughout the day. On the three nights he observed the Des Plaines residence, Zarnick saw the family entering the house and remaining there late into evening when he left for the night. He also observed the family leaving the house early the next morning for school. When Zarnick "spot-checked" the Niles building, he found none of the family's vehicles at that location. There was also evidence that plaintiffs had M.G. enrolled in a Des Plaines district school through the 2015-16 school year, even though they testified that they moved to the Niles apartment in 2012.

¶ 43    The hearing officer found that the family was willing "to tell school officials what is expedient, rather than what is true." Although "the complete truth of the situation is that the family somewhat fluidly moves about between the Des Plaines house and the Niles apartment, based on their needs and their schedules on a day to day basis," he found that "residence cannot be fluid or chosen." Taking account of all the evidence presented, the hearing officer found no intention by plaintiffs to reside in Niles. Rather, like the situation in *Connelly*, the evidence "overwhelmingly suggested that the family's primary base of operations is Des Plaines, not Niles." We do not find this determination to be clearly erroneous.

¶ 44    Plaintiffs disagree with these conclusions and urge this court to consider and weigh the evidence differently. However, it is the responsibility of the Board, not the courts, to weigh the evidence and resolve any conflicts in the evidence. *Fedanzo v. City of Chicago*, 333 Ill. App. 3d 339, 349 (2002). This is a case of administrative review. Our standard of review requires us to affirm the Board's determination if there is any competent evidence in the record to support it. *Id.* As such, we affirm the Board's determination that M.G. was a resident of Des Plaines during the 2017-18 school year, and not a resident of the Park Ridge-Niles District.

¶ 45    Plaintiffs also contend that the Board's process was unfair in that they "only had a few days to prepare for the 'sudden' accusations against them." Although they cite no authority in support of their argument, nor do they specifically cite any provision of the School Code, we will address this concern.

¶ 46    Section 10-20.12b provides the procedure for challenging a district's residency determination. It states that the Board shall notify a party of its determination that a student is

not a resident and give specific reasons for the finding. 105 ILCS 5/10-20.12b(c) (West 2016). The provision continues:

> "Within 10 calendar days after receipt of the notice, the person who enrolled the pupil may request a hearing to review the determination of the school board. *** Within 10 calendar days after receipt of the request, the board shall notify, by certified mail, return receipt requested, the person requesting the hearing of the time and place of the hearing, which shall be held not less than 10 nor more than 20 calendar days after the notice of hearing is given. At least 3 calendar days prior to the hearing, each party shall disclose to the other party all written evidence and testimony that it may submit during the hearing and a list of witnesses that it may call to testify during the hearing." *Id.*

¶ 47    The District sent plaintiffs a notification letter on May 16, 2018. On May 18, 2018, plaintiffs' attorney sent a letter requesting a hearing. In a letter dated May 25, 2018, the District acknowledged receipt of plaintiffs' request and informed them that a hearing would be held on June 7, 2018. The hearing date was scheduled more than 10 calendar days from the District's notice of the hearing, in compliance with section 10-20.12b(c). The letter further informed plaintiffs that "[a]t least 3 calendar days before the hearing, both parties must disclose to each other all written evidence and testimony that it will submit during the hearing and a list of witnesses that it may call to testify during the hearing." We find nothing in the record to support plaintiffs' contention that the District's process was improper.[1]

¶ 48                                    IV. CONCLUSION
¶ 49    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 50    Affirmed.

---

[1]Due to our disposition of the appeal, we need not consider defendants' argument that the circuit court below should have granted their motion to dismiss plaintiffs' amended complaint.